FRED E. BERG, Appellee, v. FRANK W. BERG et al., Appellants;
A. C. RUBLE et al., Garnishment Defendants,
Appellees.

No. 43163.

JANUARY 21, 1936.

REHEARING DENIED MAY 16, 1936.

Mark C. Reno and John N. Hughes, Jr., for appellants.

Lappen, Carlson & Clarke and Emerett C. Hansen, for appellee Fred E. Berg.

Fey H. Moody, for appellee Gillespie.

Powers, J.—Fred E. Berg, plaintiff appellee, obtained a judgment in a real estate mortgage foreclosure proceedings on January 24, 1930, against the defendants appellants, Frank W. Berg and Mayme E. Berg. Thereafter, the mortgaged premises were sold under special execution and the proceeds credited on the judgment on March 8, 1930, leaving a deficiency on that date of approximately $2,900. Subsequently, and on September 21, 1934, Fred E. Berg procured a general execution on this judgment and garnished A. C. Ruble, an appellee herein. The garnishment was challenged by the defendant on the ground, among others, that the issuance of the execution was improper because in violation of the provisions of Chapter 178, Acts of the 45th General Assembly. Plaintiff, by resistance, alleged that the act was not applicable, and that if applicable was unconstitutional. There was also a question before the trial court as to whether Ruble was indebted to the defendants at the time the garnishment was served, but the correctness of the court's ruling on that question of fact is not challenged here.

I. The question of the application of the statute to a judgment obtained before its passage has been determined by this court adversely to the claim of plaintiff appellee. In Johnson v.

Keir, 220 Iowa 69, 261 N. W. 792, we held that the act applied to a judgment in existence at the time of its passage.

II. There remains for consideration only the question of the constitutionality of the statute. The statute was passed in April, 1933, and the part assailed provides that:

"From and after January 1, 1934, no judgment in an action for the foreclosure of a real estate mortgage or deed of trust or in any action on a claim for rent or judgment assigned by a receiver of a closed bank or rendered upon credits assigned by the receiver of a closed bank when the assignee is not a trustee for depositors or creditors of the bank shall be enforced and no execution issued thereon and no force or vitality given thereto for any purpose other than as a set-off or counter claim after the expiration of a period of two (2) years from the entry thereof." Section I.

The grounds of attack on the validity of this statute which have any application to the situation will be separately considered.

 It is claimed that the statute impairs the obligation of contract and violates the contract clause of the Federal Constitution (article I, section 10, cl. 1).

 The statute has to do only with the time within which judgments may be enforced. Judgments are not contracts in the ordinary sense. They lack the essential elements of a contract. There are no mutual promises or mutual obligations in a judgment. The obligation of a judgment does not arise from any meeting of the minds of the parties. The Supreme Court of the United States has held that a judgment is not a contract within the meaning of the contract clause of the Constitution. In Morley v. Lake Shore, etc., Ry. Co., 146 U. S. 162, 13 S. Ct. 54, 57, 36 L. Ed. 925, that court said:

"The judgment is not itself a contract within the meaning of the constitutional provision. * * * The most important elements of a contract are wanting. There is no 'aggregatio mentium'. The defendant has not voluntarily assented or promised to pay."

But even though it be regarded as a contract and a part of the original contract on which the judgment was based, it is not impaired by the statute assailed. The statute does not reduce in

any way the rights which attach to the ownership of a judgment, but it does place a limitation on the time within which that right must be exercised. It is essentially a statute of limitations. Statutes of limitation are uniformly held not to offend against the contract clause of the Federal Constitution so long as they leave to the holder of a contract a reasonable time in which to enforce it. Statutes of limitation are statutes of repose and peace. No one has a right to continue to keep a community embroiled and a court clogged for all time with vain efforts to enforce contract rights. So long as reasonable opportunity is afforded, there is no offense against the constitutional provision. In Turner v. State of New York, 168 U. S. 90, 18 S. Ct. 38, 40, 42 L. Ed. 392, the Supreme Court of the United States said:

"It is well settled that a statute shortening the period of limitation is within the constitutional power of the legislature, provided a reasonable time, taking into consideration the nature of the case, is allowed for bringing an action after the passage of the statute, and before the bar takes effect."

In Gilfillan v. Union Canal Co., 109 U. S. 401, 3 S. Ct. 304, 306, 27 L. Ed. 977, the same court again said:

"As to statutes of limitations, it has always been held that shortening the time within which actions on existing contracts must be brought impairs no obligation of the contract, if a reasonable time is given to bring a suit before the bar attaches."

In Wooster v. Bateman, 126 Iowa 552, 554, 102 N. W. 521, 522, this court said:

"That the Legislature may amend a statute of limitations, either shortening or extending the time within which an existing cause of action may be barred, without violating the constitutional prohibition against the passage of any law impairing the obligation of contracts, if a reasonable time is given for the commencement of an action before the bar takes effect, is settled by the united voice of authority." And further: "A statute requiring the prompt enforcement of a right does not deprive the litigant of that right, nor lessen or change the remedy."

The statute in question places a two-year limitation upon the time during which judgments which come within the provi-

sions of the act must be enforced. As to judgments which were rendered before its passage, the act recognizes that the two-year period may have run or so nearly run that some special provision should be made to enable such holders to enforce their judgments. So the act provides that it shall not become effective as a bar to the enforcement of judgments until January 1, 1934, nearly nine months after its passage. No claim is made that the further time thus provided for the enforcement of such judgments is not a reasonable time. No showing in that respect was attempted. The particular judgments affected by the act all belong to a class where there has been some special opportunity to collect or effort to collect either on the judgment or on the claim on which the judgment is based, as will hereinafter be more particularly pointed out. Less time has been held to be reasonable. See note, 49 A. L. R. 1263. Under such circumstances, it cannot be said that there is any violation of the contract clause.

■■■ III. It is also claimed that the act as applied to judgments in existence at the time of its adoption violates the due process clause of the Fourteenth Amendment to the Constitution of the United States. This necessarily presupposes that the holder of the judgment has a vested interest or right amounting to a property right in the remedy afforded for the enforcement of the judgment at the time the judgment is obtained.

■■■ The argument is that the taking away of that remedy, or some part thereof summarily and by legislative fiat, is, therefore, a taking of property without due process of law. But a citizen does not ordinarily acquire any vested interest amounting to a property right in a remedy which a statute affords. The Supreme Court of the United States in Terry v. Anderson, 95 U. S. 628, 633, 24 L. Ed. 365, said:

"It is difficult to see why, if the legislature may prescribe a limitation where none existed before, it may not change one which has already been established. The parties to a contract have no more a vested interest in a particular limitation which has been fixed, than they have in an unrestricted right to sue. They have no more a vested interest in the time for the commencement of an action than they have in the form of the action to be commenced."

If this were not so, changes in remedial statutes, such as

statutes of limitation, could never be made applicable to rights in existence when the statute was adopted. Yet it is quite generally and universally held that such statutes may be applied to existing rights without violating the due process clause if a reasonable time is allowed for the enforcement of the right after the passage of the statute and before the bar of the statute becomes effective. Cooley, in his work on Constitutional Law, page 340, says:

"A statute of limitation takes away no right of property. Such a statute prescribes a reasonable time within which a party claiming legal rights which another withholds shall commence legal proceedings for their enforcement; but all limitation acts must allow to claimants a reasonable opportunity to assert their rights in court and one entirely and manifestly unreasonable in the time it gives is void."

The Supreme Court of the United States in Kentucky Union Co. v. Kentucky, 219 U. S. 140, 31 S. Ct. 171, 178, 55 L. Ed. 137, says:

"A time not unreasonably short for the beginning of actions may be fixed by the legislature, having in view particular conditions, without violating the due process clause."

So that if the due process clause is applicable to the situation, its demands are satisfied by allowing a reasonable time in which to enforce existing rights before the remedy is cut off. The provision of the act now under consideration which accomplishes that purpose and which saves it from the charge of impairing the obligations of contracts, as pointed out in the preceding division of this opinion, also saves it from the charge of violating the due process of law clause of the Fourteenth Amendment to the Constitution of the United States.

■■■ IV. It is further asserted that the act violates the provisions of the Constitution of the state requiring all laws of a general nature to be uniform in their operation and prohibiting the granting of privileges to any citizen or class of citizens which are not on the same terms available to all, (section 6, art. 1, Const. Iowa) and the equal protection of the law clause of the Fourteenth Amendment to the Constitution of the United States. These attacks may be considered together because the two provisions invoked so far as applicable here, both seek to insure

equality before the law and aim at the same evil, namely, class legislation. Circumstances, therefore, which render legislative acts inoffensive in that respect to one provision will, in general, render them inoffensive to the other. It is said that the act offends against these provisions because it applies to certain judgments only and not to all judgments. But these provisions do not prevent classifications for the purpose of legislation so long as the classifications are natural and reasonable and have some basis in fact. These provisions are offended against only when the classifications adopted for purposes of legislation are purely arbitrary and capricious and without any reasonable basis in fact. The Supreme Court of the United States has laid down the applicable rules, so far as the equal protection clause is concerned, in Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 340, 55 L. Ed. 369, Ann. Cas. 1912C, 160, as follows:

"The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these:

"1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.

"2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

"3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

"4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

In State v. Garbroski, 111 Iowa 496, 82 N. W. 959, 56 L .R. A. 570, 82 Am. St. Rep. 524, this court recognized substantially the same tests when the attack was based on the provisions of the State Constitution prohibiting the granting of special privileges. In Wooster v. Bateman, 126 Iowa 552, 102 N. W. 521, where there was involved a classification of judgments based

solely upon the period of time during which they were entered, this court, in upholding the classification against the attack that it violated the provision of the State Constitution, said:

"The classification must be based upon apparent natural reason; some reason suggested by necessity, by such difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or the propriety of different legislation with respect to them."

The act assailed is applicable only to three classes of judgments, namely: (1) judgments entered in proceedings for the foreclosure of real estate mortgages or deeds of trust; (2) judgments entered for rent; and (3) judgments purchased in the winding up of a receivership of a closed bank, or based on credits so purchased. Is there any reasonable basis on which judgments in those three classes can properly be treated as a separate class of judgments for the purpose of the limitations imposed by the act? The purpose of every money judgment, of course, is to enable the holder to collect a debt. The time within which a judgment may reasonably and properly be collected, if collectible, will vary somewhat with the opportunities for prompt collection and effort made toward collection, either of the judgment or of the claim before it was reduced to judgment. So far as these circumstances make for a natural classification of judgments, distinctions in the length of time allowed for collection may properly be made. Judgments for the foreclosure of real estate mortgages and for rent naturally belong to a class where there has been superior opportunity to collect. It is a matter of common knowledge that real estate loans generally are made very largely, if not entirely, upon the security of real estate. Institutions engaged in the business of making such loans have the property appraised and loan thereon only a percentage of the value of the property. Not only that, but such loans are usually made for a period of years. The maker may be dead long before they mature. So that the personal responsibility of the borrower does not have the same relation to that type of loan as it does to an ordinary loan. Then, too, real estate is generally regarded as having a fixed and permanent value as compared to chattel property. Recent events may have somewhat shaken the popular faith in this ancient conception. The future may, however, demonstrate that the doubters may have only con-

fused actual value with marketability. In actions to foreclose real estate mortgages, the judgment is a lien upon the real estate and the holder of the judgment is entitled at once to special execution for the sale of the real estate to pay the judgment. Likewise, in actions for rent, the landlord has a lien created by statute not only upon all crops grown on the leased premises, but upon all property of the tenant brought upon the leased premises, and the landlord is entitled to a special remedy, namely, a landlord's writ of attachment without bond for the enforcement of that lien. So that in a judgment for rent, the holder of the judgment likewise has a special lien upon property which ordinarily is worth far more than the amount of the lien and is given the right to a special execution for the sale of said property for the satisfaction of the judgment. In the case of judgments or credits sold by a receiver of a bank in winding up the affairs of the bank, the owner of the judgment has no such special advantage in the collection as in the other two cases, but all of such judgments or credits have, during the time the receivership was open, been subjected to a continuous pressure for collection. By the appointment of a receiver of a bank to wind up the affairs of the bank, an officer of the court is put in charge. His orders are to collect the assets of the bank. He is presumed to have some special capacity for that task. When he has finished with his task it is fair to assume that vigorous and long-continued effort has already been made to collect on all the assets belonging to his trust. The purchaser of such assets as may remain, therefore, is not at all in the same natural position as the ordinary holder. What he obtains by such purchase has already gone through an official process of collection. It is quite natural, therefore, that he should not require the time to collect judgments which are a part of, or grew out of such assets as might properly be allowed on judgments ordinarily. The circumstance that the judgments affected by this act are judgments as to which there are special opportunities to collect or have gone through an official process of collection, or are on claims which have gone through such process, suggests a very reasonable and natural classification of such judgments for the purpose of imposing a shorter limitation upon the time during which they must be collected.

It may be that there are other classes of judgments which might properly be embraced within the terms of the act because they have the same characteristics as the judgments which are

covered by the act. The point has not been urged upon us. No effort was made to demonstrate that such a situation exists. But if it be conceded that it does, the act is not thereby rendered invalid. The classification adopted may be inaccurate, unscientific, and even unjust, but that does not demonstrate that it is purely arbitrary. We have held that classifications for purposes of legislation where there was less real distinction in fact to be proper. In Hubbell v. Higgins, 148 Iowa .36, 126 N. W. 914, Ann. Cas. 1912B, 822, we held that a statute requiring all hotels having ten sleeping rooms or more to take out a license and to conform to certain sanitary and fire prevention requirements was not arbitrary. The distinction as a basis for classification between hotels which have ten sleeping rooms and those which have only nine is much less real and natural and has much less substance in fact than the distinction between the judgments affected by this act and ordinary judgments.

Moreover, a legislature, in attempting to eradicate what it regards as an evil, is justified in singling out for legislative treatment a single class where it regards the evil as existing in a flagrant form. In State v. Fairmont Creamery Co., 153 Iowa 702, 704, 133 N. W. 895, 899, 42 L. R. A. (N. S.) 821, the court had under consideration the validity of a legislative act affecting only certain farm commodities and then only under certain conditions. The court held that the legislation was proper and quoted with approval from an opinion by the Supreme Court of the United States (Carroll v. Greenwich Ins. Co., 199 U. S. 401, 26 S. Ct. 66, 50 L. Ed. 246) that:

"If an evil is specially experienced in a particular branch of business, the Constitution embodies no prohibition of laws confined to the evil, or doctrinaire requirement that they should be couched in all-embracing terms."

It may well be that the evil which the legislature sought to remedy existed in its more flagrant form in these particular classes covered by the act. The legitimate and proper purpose of all statutes of limitation may have been achieved as to other judgments by the general limitation previously existing, but not as to those covered by the act. This would justify a special classification and special treatment.

Since it is the rule that if any state of facts reasonably can be conceived to sustain a classification adopted by a statute, the

existence of those facts when the law was enacted must be assumed, it follows that the classification adopted in this case does not render the act invalid. There may have been other and more cogent reasons in the mind of the legislature for making the classification it did than the reasons herein suggested. Those suggested are, however, sufficient to show that the classification was not purely arbitrary.

It is well recognized in this state, as elsewhere, that in order to justify the court in declaring an act of the legislature violative of the Constitution, such violation must be clear and palpable. In case there be doubt, the rule is to resolve the doubt in favor of the validity of the legislation. The burden is upon those attacking the law to show that the classification made in the statute is arbitrary and without any justification in fact. That burden has not been met. It does not appear that there are not natural reasons which justify the classification of judgments made by the legislature for the purpose of applying a special limitation on the time during which such judgments may be enforced.

We find that the act applies to the judgment involved in this case and that the act is constitutional. It follows that at the time the execution was issued in this case, the time within which an execution could properly issue had passed and the issuance of the execution and the proceedings thereunder were consequently unauthorized, illegal, and void, and the entry of a judgment against a garnishee under such execution was error. The case must, therefore, be reversed.

The motion submitted with the case to dismiss the appeal on the ground that the question was moot because the garnishee had paid over to his co-appellee the amount of the judgment against him is overruled.—Reversed.

DONEGAN, C. J., and ANDERSON, KINTZINGER, PARSONS, HAMILTON, MITCHELL, and RICHARDS, JJ., concur.