LAURA DICKINSON, Appellant, v. C. FRED PORTER, State Comptroller, et al., Appellees.

No. 47072.

(Reported in 35 N. W. 2d 66)

DECEMBER 14, 1948.

REHEARING DENIED MARCH 11, 1949.

Clewell & Cooney and Wm. G. Fuerste, all of Dubuque, for appellant.

Robert L. Larson, Attorney General, Oscar Strauss, Assistant Attorney General, F. H. Becker, County Attorney, and Wisdom & Wisdom, of Des Moines, for appellees.

GARFIELD, J.—Because a rehearing was granted, the former opinion herein, reported in 31 N. W. 2d 110, is withdrawn and the following substituted therefor.

Plaintiff, who owns a four-acre tract used solely for agricultural purposes in Epworth School District, Dubuque county, challenges the Agricultural Land Tax Credit Act (chapter 426, Code, 1946) on the grounds, insofar as here urged, it violates: (1) Article III, section 30, and Article I, section 6, Constitution of Iowa, and section 1 of the Fourteenth Amendment to the Constitution of the United States in that the law lacks uniformity and provides arbitrary and discriminatory classifications, and (2) Article III, section 31, Constitution of Iowa, in that it appropriates public money for a private purpose. The

trial court held the law was not unconstitutional upon the grounds urged and plaintiff has appealed.

The challenged act, passed by the Fifty-first General Assembly (chapter 192) in 1945, appropriates for each fiscal year $500,000 to be apportioned as a credit against the tax on each tract of agricultural lands in school districts where the millage for the general school fund exceeds fifteen mills. The amount of such credit is the amount by which the school tax exceeds a tax based on a levy of fifteen mills. To be entitled to the credit each owner must deliver to the assessor or file with the county auditor a verified statement and designation of the agricultural lands upon which credit is claimed. (Section 426.4.) If the appropriation (of $500,000) is insufficient to pay the credits in full they shall be paid on a pro rata basis. (Section 426.9.)

Agricultural lands are defined by section 426.2 as "all tracts of land of ten acres or more, and not laid off into lots of less than ten acres or divided by streets and alleys into parcels of less than ten acres, lying within any school corporation in this state and in good faith used for agricultural or horticultural purposes."

The Forty-eighth General Assembly in 1939 by chapter 109 passed a law similar to the present Code chapter 426 except that it applied only to "agricultural lands" within independent school districts. An owner of agricultural land in a consolidated school district challenged the constitutionality of that act on all grounds now urged by plaintiff against chapter 426. We held the earlier law "clearly discriminates against those owning agricultural lands not located in an independent school district." We observed, however, "If there was anything that distinguished agricultural land located in an independent school district from similar land in other school districts we would have a different situation." Keefner v. Porter, 228 Iowa 844, 852, 293 N. W. 501, 504.

Following this decision the appointment of a commission was authorized by chapter 152, Acts of Forty-ninth General Assembly, in 1941, and again by chapter 314, Acts of Fiftieth General Assembly, in 1943, to assist in the revision of laws relating to education and to prepare a proposed school code.

The Fiftieth General Assembly (chapter 314, section 2) directed that the commission authorized by it "shall give particular attention to the tax structure of the State of Iowa in so far as it concerns the school system of the state, and make recommendations with reference to same * * *." This commission in effect recommended adoption of the present law which was passed by the Fifty-first General Assembly with only two dissenting votes in the house and one in the senate. This act applies the limitation of fifteen mills to "agricultural lands" in all school districts, not merely independent districts, as did the earlier law held invalid in Keefner v. Porter, supra.

Since the single basis of attack sustained by the Keefner opinion was eliminated in the enactment of the present statute, of course it is not now advanced. In other respects, however, plaintiff's petition, briefs and arguments are largely patterned after and copied from plaintiff's petition, briefs and arguments in the Keefner case. Of course if the contentions this plaintiff urges are sound now, they were equally so when Keefner v. Porter was decided. It would seem we were not then convinced of the soundness of such grounds.

We should hesitate to declare the present act void since the legislature, after the Keefner opinion was filed, reasserted its power to enact the present law with the elimination of the objectionable feature pointed out in that opinion. See Stewart v. Board of Supervisors, 30 Iowa 9, 1 Am. Rep. 238, a leading authority which upholds a law (passed a second time with modifications, after a decree of unconstitutionality) authorizing a tax in aid of railroads, frequently cited throughout the subsequent history of this and other courts. See also Minsinger v. Rau, 236 Pa. 327, 84 A. 902, Ann. Cas. 1913E 1324, which considers an attack upon a law recommended by a commission and passed by two legislative sessions.

I. All presumptions are in favor of the constitutionality of this statute and it will not be held invalid unless it is clear, plain and palpable that such decision is required. Miller v. Schuster, 227 Iowa 1005, 1014, 1015, 1020, 289 N. W. 702, and citations; Loftus v. Department of Agriculture, 211 Iowa

566, 570, 232 N. W. 412, and citations; 16 C. J. S., Constitutional Law, section 99a.

We have pointed out repeatedly the General Assembly has power to enact any kind of legislation it sees fit provided it is not clearly and plainly prohibited by some provision of the state or federal constitution. Carlton v. Grimes, 237 Iowa 912, 943, 23 N. W. 2d 883, 899, and citation; Loftus v. Department of Agriculture, supra, 211 Iowa 566, 569, 570, 232 N. W. 412. See also 16 C. J. S., Constitutional Law, section 70.

It is not our province to pass upon the policy, wisdom, advisability or justice of a statute. The remedy for unwise or oppressive legislation within constitutional bounds is not to be found in the courts but by appeal to the legislators. Mc-Guire v. Chicago, B. & Q. R. Co., 131 Iowa 340, 349, 108 N. W. 902, 33 L. R. A., N. S., 706, and citations. See also Merchants Supply Co. v. Iowa Emp. Sec. Comm., 235 Iowa 372, 383, 384, 16 N. W. 2d 572, 578, 579; 11 Am. Jur., Constitutional Law, section 138.

The burden does not rest upon defendants (state and county officials charged with duties under the law) to convince us the act is constitutional. Plaintiff has the burden to satisfy us beyond a reasonable doubt (Miller v. Schuster and Loftus v. Department of Agriculture, both supra, and citations) the act violates the constitutional provisions invoked and to point out the manner or respect in which it violates them. In other words, she "must point out and state with particularity the details of supposed invalidity." 11 Am. Jur., Constitutional Law, section 132. To the same effect are 16 C. J. S., Constitutional Law, section 96a, page 224; Peverill v. Board of Supervisors, 201 Iowa 1050, 1056, 205 N. W. 543. See also Quong Wing v. Kirkendall (Holmes, J.), 223 U. S. 59, 63, 64, 32 S. Ct. 192, 193, 56 L. Ed. 350, 352.

Further, it is plaintiff's burden to negative every conceivable basis which may support this statute. Madden v. Kentucky, 309 U. S. 83, 88, 60 S. Ct. 406, 84 L. Ed. 590, 593, 125 A. L. R. 1383, 1386, cited with approval in Merchants Supply Co. v. Iowa Emp. Sec. Comm., supra, 235 Iowa 372, 383, 16 N. W. 2d 572, 578. See also Carmichael v. Southern Coal & Coke Co.

(Stone, J.), 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327, 1333, 1336, 1337, also cited with approval in the Merchants Supply Co. case; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78, 79, 31 S. Ct. 337, 340, 55 L. Ed. 369, 377, Ann. Cas. 1912C 160, from which we quote with approval in Berg v. Berg, 221 Iowa 326, 332, 264 N. W. 821; Tolerton & Warfield Co. v. Board of Assessment and Review, 222 Iowa 908, 913, 914, 270 N. W. 427.

II. Article III, section 30, and Article I, section 6, of our state constitution, invoked by plaintiff, require that the law in question have a uniform operation throughout the state. The effect of section 1, Fourteenth Amendment to the Constitution of the United States as applied to this case is substantially the same as these uniformity provisions of our own constitution. In general, if a law does not offend against one constitution it is inoffensive to the other. Berg v. Berg, 221 Iowa 326, 331, 332, 264 N. W. 821; Lake Superior Consol. Iron Mines v. Lord, 271 U. S. 577, 581, 46 S. Ct. 627, 628, 70 L. Ed. 1093, 1101; State ex rel. Northern Pac. Ry. Co. v. Henneford, 3 Wash. 2d 48, 99 P. 2d 616, 619; Schmitt v. Nord, 71 S. D. 575, 27 N. W. 2d 910, 912; Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102, 105; City of Jackson v. Mississippi Fire Ins. Co., 132 Miss. 415, 95 So. 845, 847; 51 Am. Jur., Taxation, section 169.

Both in her petition and in argument here plaintiff's complaint is that the statute conflicts with the above constitutional provisions in that the classifications in the law are unreasonable and arbitrary. It is contended there is no basis for separately classifying (1) agricultural lands (2) of ten acres or more (3) in school districts where the millage exceeds fifteen mills. The contention the act appropriates public money for a private purpose in violation of Article III, section 31, Iowa Constitution, will be considered later.

If there is any reasonable ground for the classifications in this law and it operates equally upon all within the same class, there is uniformity in the constitutional sense and no violation of any constitutional provision invoked by plaintiff. Iowa Motor Vehicle Assn. v. Board of Railroad Commrs., 207 Iowa 461, 468, 221 N. W. 364, 75 A. L. R. 1, affirmed 280 U. S.

529, 50 S. Ct. 151, 74 L. Ed. 595; 51 Am. Jur., Taxation, section 169. See also Hubbell v. Higgins, 148 Iowa 36, 39, 126 N. W. 914, Ann. Cas. 1912B 822; 61 C. J., Taxation, section 58.

The statute amounts to a legislative finding there are sufficient differences between property to which the act applies and other property to justify the classification. We will not interfere unless plaintiff has proven the classification does not rest on a reasonable basis but is essentially arbitrary and palpably discriminating. Iowa Motor Vehicle Assn. v. Board of Railroad Commrs., supra.

It is well recognized the legislature has a wide discretion in determining classifications to which its acts shall apply. Cook v. Hannah, 230 Iowa 249, 253, 297 N. W. 262, 265, and citations. In tax matters even more than in other fields legislatures possess the greatest freedom in classification. Madden v. Kentucky, 309 U. S. 83, 60 S. Ct. 406, 84 L. Ed. 590, 593, 125 A. L. R. 1383, 1385. See also Citizens Telephone Co. v. Fuller, 229 U. S. 322, 329, 33 S. Ct. 833, 57 L. Ed. 1206, 1213; 1 Cooley, Taxation, Fourth Ed., section 334, pages 715, 716; 16 C. J. S., Constitutional Law, section 520, page 1048.

It is not sufficient that the court may regard the reason for the classification a poor one. 16 C. J. S., Constitutional Law, section 520, page 1049; 1 Cooley, Taxation, Fourth Ed., section 334, page 714. The differences upon which the classification is based need not be great or conspicuous. Ibid., and citations.

"An iron rule of equal taxation" is neither attainable nor necessary. Merchants Supply Co. v. Iowa Emp. Sec. Comm., supra, 235 Iowa 372, 383, 384, 16 N. W. 2d 572, 578, 579, and citations; Madden v. Kentucky, supra; Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 237, 10 S. Ct. 533, 33 L. Ed. 892, 895.

Further, a classification, as in the act here, for the purpose of proportioning the tax may be valid even though such a classification would be invalid for the purpose of applying a complete exemption. See Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 38, 48 S. Ct. 423, 72 L. Ed. 770, 774, from which we quote in Keefner v. Porter, supra (228 Iowa 844, 848, 293 N. W. 501); 1 Cooley, Taxation, Fourth Ed., section 336, page 719.

III. We consider first the classification of lands used for agricultural purposes. We are not convinced our legislature may not separately classify such lands for taxation for school purposes. Nor have we ever held such a classification invalid.

"The purpose for which property is kept or used has long been a recognized, if not a favorite, basis for distinction in taxation." 51 Am. Jur., Taxation, section 182. See also 61 C. J., Taxation, section 58, page 129; 1 Cooley, Taxation, Fourth Ed., section 335, page 717; Apartment Operators Assn. v. City of Minneapolis, 191 Minn. 365, 254 N. W. 443, 445.

It is true of course there are common characteristics between agricultural land and other realty in the matter of taxation for school purposes. But we cannot say there are not characteristics which differentiate it from other realty in relation to school taxes. We are not convinced the legislature could not with reason conclude that agricultural land derives less benefit, in enhanced value or otherwise, from the money raised by school taxes than other real estate. City or town residence property or real estate used for business purposes may well be affected by our school system in quite a different way than land used for agricultural purposes which consists of comparatively large tracts. The legislature could reasonably have concluded that agricultural lands are taxed excessively for school purposes as compared with property devoted to other uses and that such taxes should be equalized in accordance with benefits received.

Very likely other reasons occurred to the legislature why a distinction should be made between agricultural lands and other realty. We have indicated enough to justify our unwillingness to hold there is no possible rational basis for such classification.

It is no defense to the collection of a tax for school or other purposes that the person or property taxed is not actually benefited by the expenditure of the proceeds of the tax nor as much benefited as others. Accordingly a childless, nonresident or corporate owner of property may be taxed for school purposes. However, there is nothing in the constitutional provisions invoked by plaintiff which prevents our legislature from considering actual benefits received in classifying persons or property for taxation. Nor has any decision come to our attention which

demands a holding here the lawmakers are without such power.

The obligation of the individual to pay taxes is founded in his participation in the benefits arising from their expenditure. Thomas v. Gay, 169 U. S. 264, 277, 18 S. Ct. 340, 42 L. Ed. 740, 745. If it were practicable and possible to do so, all taxes should be apportioned among the people according to the benefit each receives. See 1 Cooley, Taxation, Fourth Ed., section 89, page 213.

That in classifying persons or property for taxation legislatures may consider actual benefits is held in Great Northern R. Co. v. Whitfield, 65 S. D. 173, 272 N. W. 787, 111 A. L. R. 1475, 1483; Reed v. Bjornson, supra, 191 Minn. 254, 253 N. W. 102, 108, and citations; Apartment Operators Assn. v. City of Minneapolis, supra, 191 Minn. 365, 254 N. W. 443, 445; Nance v. Harrison, 176 Ga. 674, 169 S. E. 22, 26. See also Clark v. Kansas City, 176 U. S. 114, 20 S. Ct. 284, 44 L. Ed. 392; Philadelphia, B. & W. R. Co. v. Mayor and Council of Wilmington, 1948, Del. Ch., 57 A. 2d 759, 765.

Leicht v. City of Burlington, 1887, 73 Iowa 29, 31, 34 N. W. 494, 495, upheld as uniform in the constitutional sense chapter 47, Acts of Sixteenth General Assembly (as amended, section 616, Code, 1897, section 404.4, Code, 1946), which completely exempted from taxation for any municipal purpose, except road tax, lands within the extended limits of a city or town containing more than ten acres, occupied and used for agricultural purposes. The opinion states "the design of the legislature evidently was to exempt property which is used essentially for agricultural purposes."

The language just quoted is repeated in Farwell v. Des Moines Brick Mfg. Co., 97 Iowa 286, 294, 295, 66 N. W. 176, 35 L. R. A. 63, apparently as stating the effect of the decision in Leicht v. City of Burlington, supra. 1 Cooley, Taxation, Fourth Ed., section 284, page 599, says that in Iowa an exemption from city taxation of agricultural or unplatted land in a city has been upheld, citing the Leicht case.

Philadelphia, B. & W. R. Co. v. Mayor and Council of Wilmington, supra, 1948, Del. Ch., 57 A. 2d 759, 765, 766, cites Leicht v. City of Burlington, supra, with apparent approval

and sustains a classification for taxation for city and school purposes under which rural or suburban property in a city is taxed at half the rate applied to the built-up portions of the city. The court says, "inherent differences in its nature or character, and even in its use, may be sufficient" to support a classification of property for tax purposes.

Clear Lake Co-op. Live Stock Shippers Assn. v. Weir, 200 Iowa 1293, 1298, 1299, 206 N. W. 297, 299, upholds as of uniform operation what is now section 498.19, Code, 1946, relating to nonprofit-sharing co-operative associations. The opinion states:

"There is no industry to be found anywhere in which classifications based thereon are more natural, obvious, and exclusive than in agriculture. It is as distinct in its character as mining, manufacturing, banking, or any other branch or division into which society is economically divided."

Tigner v. Texas, 310 U. S. 141, 144, 147, 60 S. Ct. 879, 880, 84 L. Ed. 1124, 1128, 130 A. L. R. 1321, sustains a state antitrust law which does not " 'apply to agricultural products or livestock in the hands of the producer or raiser.' " After referring to legislation which differentiates between agriculture and other industry, the court says:

"These various measures are manifestations of the fact that in our national economy agriculture expresses functions and forces different from the other elements in the total economic process. Certainly these are differences which may be acted upon by the lawmakers."

Great Northern Ry. Co. v. Whitfield, 65 S. D. 173, 184, 272 N. W. 787, 792, 111 A. L. R. 1475, 1483, unanimously holds a statute quite similar to that here challenged does not violate the Fourteenth Amendment to the Constitution of the United States which, under the authorities cited in Division II hereof and others, restricts the legislative power to substantially the same extent as the uniformity provisions of our state constitution. This language from the opinion is applicable here:

"We believe it true also that the Legislature could reason-

ably conclude that the benefit to agricultural land from school taxes is less than the benefit to other lands from the same source * * *. It is conceivable that the benefits from education so far as real estate is concerned, whether it be the enhanced value of that real estate due to the adequate educational facilities offered or some other benefit, reflects itself less in real estate used exclusively for agricultural purposes than any other land. For example, a merchant's business or even a railroad's business, which is dependent somewhat upon real estate in the operation of the business, might well be quite differently affected by an adequate educational system located in the community, than the business of agriculture. So far as concerns real estate, which is set apart primarily for homes or residences by being platted, obviously educational advantages reflect themselves in that real estate differently from the manner in which they reflect themselves in land used exclusively for agriculture. Land used exclusively for agriculture consists of a comparatively large tract which is the whole base of the business. This is not true of land used in other businesses. It seems to us that repeatedly courts have sustained classifications founded upon reasons much more obscure than those here presented. * * *

"In all probability other considerations occurred to the Legislature in making the distinction, but the possible considerations herein pointed out are sufficient in our opinion to prevent us from holding that there could be no possible rational basis for the legislative classification."

Clark v. Kansas City, supra, 176 U. S. 114, 20 S. Ct. 284, 44 L. Ed. 392, upholds legislation under which land used for agricultural purposes when not owned by corporations is not subject to municipal taxes. The decision is direct authority for the legislative right to classify agricultural lands and other lands for taxation for municipal purposes.

16 C. J. S., Constitutional Law, section 520, pages 1046–1052, states:

"The states may, therefore, tax certain classes of property to the exclusion of other classes, and, for different classes of persons or property, may prescribe different * * * rates of

taxation * * * even though the difference between the subjects taxed is not great. * * * Applying the foregoing principles, a state may, for tax purposes * * * classify lands into tracts used for agricultural purposes and tracts used for other purposes."

Apartment Operators Assn. v. City of Minneapolis, 191 Minn. 365, 368, 254 N. W. 443, 444, 445, and cases therein cited, uphold classifications for taxation based largely upon use of the property, which apply a different rate to each class. One class consists of real estate in which iron ore is known to exist. The ore, mined or unmined, is assessed at fifty per cent of value. Another class is unplatted realty, assessed at thirty-three and one-third per cent of its value. All other real estate is assessed at forty per cent of value. Another class is unplatted real estate used as a homestead, assessed at twenty per cent of value, provided if the value exceeds $4000, the excess is assessed at thirty-three and one-third per cent. All platted realty used as a homestead is assessed at twenty-five per cent of value, provided any value in excess of $4000 is assessed at forty per cent. In unanimously sustaining the classifications of homestead property, the court says:

"That use is a proper basis for classification cannot now well be questioned. * * * The obvious object of the legislature was to provide for the necessary funds with which to carry on governmental functions without placing too heavy a burden upon real estate used by the owner as his home. The difference in use of the property has a fair and substantial relation to that object of the legislature, and there is no discrimination between persons in similar circumstances; it operates equally upon all coming within the respective classes."

We have gone as far in sustaining the power of the legislature to classify as we have gone here. See for example State ex rel. Welsh v. Darling, 216 Iowa 553, 246 N. W. 390, 88 A. L. R. 218; Cook v. Hannah, 230 Iowa 249, 297 N. W. 262, and cases cited, certiorari denied 314 U. S. 691, 62 S. Ct. 361, 86 L. Ed. 553; Cook v. Dewey, 233 Iowa 516, 10 N. W. 2d 8. The two Cook cases, supra, considered curative acts

applicable to tax proceedings which had the practical effect of discriminating between classes of taxpayers in the rate of taxation. As pointed out in Cook v. Hannah, lawmakers are powerless to cure by subsequent legislation what they could not have authorized in the first instance. And the power to enact curative laws is uniformly held to be subject to the same constitutional limitations as the exercise of any other legislative power. Annotation 140 A. L. R. 959, 972.

Other courts have sustained classifications for tax purposes no more substantial than this classification of agricultural lands for the purpose of applying a different rate of taxation for schools. We mention a few such decisions. There are sufficient differences between anthracite and bituminous coal to justify a tax on one while the other remains exempt. Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237. An exemption is upheld of tracts of less than one thousand acres from a provision that lands were forfeited by failure for five years to cause them to be entered on the books of the commissioners of revenue. King v. Mullins, 171 U. S. 404, 435, 18 S. Ct. 925, 937, 43 L. Ed. 214, 226. Madden v. Kentucky, supra, 309 U. S. 83, 60 S. Ct. 406, 84 L. Ed. 590, 125 A. L. R. 1383, upholds a state statute which places a tax of fifty cents per $100 on bank deposits outside the state and ten cents per $100 on deposits within the state. The exclusion of notes secured by real estate mortgages from the operation of a tax on intangibles is sustained in Love v. Silverthorn, 187 Okla. 114, 101 P. 2d 254, 129 A. L. R. 676. A law which exacted a license fee from those engaged in the laundry business other than the steam laundry business but did not apply to women so engaged where not more than two women were employed is upheld in Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350. A tax on margarine containing less then twenty per cent of animal fat but not if such content is twenty per cent or more is sustained in Ludwig v. Harston, 1948, Wyo., 197 P. 2d 252.

IV. The classification of lands used for agricultural purposes may be upheld not only upon the considerations expressed in the preceding Division III but also as in furtherance of a public policy to aid or encourage agriculture. As stated,

the burden rests on plaintiff to negative every conceivable basis upon which this statute may be upheld.

A classification is not arbitrary which rests upon some reason of public policy. Hubbell v. Higgins, supra, 148 Iowa 36, 40, 126 N. W. 914, Ann. Cas. 1912B 822; Cook v. Hannah, supra, 230 Iowa 249, 253, 297 N. W. 262, 264; 1 Cooley, Taxation, Fourth Ed., section 334, page 713; id. section 335, page 719, where it is said, "Public policy may also warrant a particular classification."

As stated in Watson v. State Comptroller, 254 U. S. 122, 124, 125, 41 S. Ct. 43, 44, 65 L. Ed. 170, 175, "Any classification is permissible which has a reasonable relation to some permitted end of governmental action. * * * It is enough, for instance, if the classification is reasonably founded in 'the purposes and policy of taxation.' " (Citations.)

The power of state legislatures to adjust their tax laws in order to encourage an industry or undertaking deemed vital to the welfare of the state or in furtherance of some related principle of public policy has frequently been upheld.

The Governor of the state in commenting upon the report of the school code commission said in his message to the legislature that enacted this law, "We all know that agriculture is Iowa's basic resource. Upon its prosperity depends the prosperity of our great number of small businesses and communities." It was most effectively demonstrated during the depression of the early nineteen thirties that the well-being of the state as a whole is directly dependent upon the welfare of agriculture. The prosperity of our basic industry was no less vital when this act was passed nor is it less vital now when many other countries look to us for food and agriculture must supply their needs.

Our state constitution contains the express mandate, "The General Assembly shall encourage, by all suitable means, the promotion of intellectual, scientific, moral, and agricultural improvement." Article IX (2nd.) section 3.

We have frequently referred to agriculture as the basic industry in this state. See for example Blume v. Crawford County, 217 Iowa 545, 550, 551, 250 N. W. 733, 92 A. L. R.

757; Clear Lake Co-op. Live Stock Shippers Assn. v. Weir, supra, 200 Iowa 1293, 1298, 206 N. W. 297. The Blume case upholds a law directing county boards of supervisors to appropriate funds raised by taxation to county farm bureaus under certain conditions and says a statute in aid of agriculture "is not repugnant to any constitutional provision." The plain inference from the opinion is that what benefits agriculture benefits the state as a whole. Other decisions generally like the Blume case appear in annotation 92 A. L. R. 768, 770.

Pertinent here is this language from Carman v. Hickman County, 185 Ky. 630, 637, 215 S. W. 408, 411, "* * * it is a matter of common knowledge of which everybody must take notice that in the agricultural interests of the state lie its chief source of wealth, and that the prosperity of the state springing from this source contributes to the growth and importance of every other industry in the state as well as to the comfort and happiness of the whole people * * *."

It is not debatable that it is part of the public policy of this state, evidenced by our constitution and numerous statutes, to encourage agriculture. It seems equally plain the encouragement of our basic industry serves the public interest. We are not convinced the legislature might not fairly conclude this law in its practical operation will both benefit and encourage agriculture.

We will mention a few of the decisions which sustain tax laws designed to encourage an industry deemed vital to the welfare of the state or in furtherance of some related principle of public policy.

In Great Northern R. Co. v. Whitfield, supra, 65 S. D. 173, 185, 190, 272 N. W. 787, 793, 111 A. L. R. 1475, 1483, which, as stated, sustains a law quite similar to the one now under attack, the court says, "We believe it reasonable for a Legislature, in an agricultural state, to offer inducements to agriculture through its tax laws." (Citations.) And the concurring opinion of Roberts, J., observes, "* * * a classification designed to conserve a source of tax revenue and to foster and promote agriculture and the common good is not arbitrary."

Carmichael v. Southern Coal & Coke Co. (Stone, J.), supra,

301 U. S. 495, 509, 512, 57 S. Ct. 868, 872, 81 L. Ed. 1245, 1253, 1255, 109 A. L. R. 1327, 1333, 1335, upholds a statute which imposes upon employers the obligation to pay a percentage of their pay rolls into a state unemployment compensation fund but exempts employers of agricultural labor and certain others. This is from the opinion:

"This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. [Citations.] * * * The legislature may withhold the burden of the tax in order to foster what it conceives to be a beneficent enterprise. *This Court has often sustained * * * exemption for the encouragement of agriculture.* [Citations.]" (Italics added.)

Aero Mayflower Transit Co. v. Georgia Pub. Serv. Comm., 295 U. S. 285, 291, 55 S. Ct. 709, 711, 79 L. Ed. 1439, 1444, sustains an exemption from an annual license fee of motor vehicles used exclusively in transporting agricultural and dairy products and observes:

"We think a classification thus designed to ameliorate the lot of the producers of farm and dairy products is not an arbitrary preference within the meaning and the condemnation of the Fourteenth Amendment. The plight of the Georgia farmer has been pictured by the state court in words already quoted. To free him of fresh burdens might seem to a wise statecraft to be a means whereby to foster agriculture and promote the common good."

American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 95, 21 S. Ct. 43, 46, 45 L. Ed. 102, 105, upholds an exemption from a license tax of planters and farmers grinding and refining their own sugar and molasses and states: "The discrimination is obviously intended as an encouragement to agriculture, and does not deny to persons and corporations engaged in a general refining business the equal protection of the laws."

In Baker v. Town of West Hartford, 89 Conn. 394, 94 A. 283, an exemption from taxation of tracts planted with forest trees is sustained on the theory the beauty of New England

scenery is largely dependent upon its forests and the act would benefit the lumbering industry in which every citizen of the state has an interest.

Hermitage Co. v. Goldfogle, 204 App. Div. 710, 199 N. Y. Supp. 382, affirmed 236 N. Y. 554, 142 N. E. 281, upholds an exemption from taxation for a limited period of certain new dwellings as an encouragement to the erection of homes.

A. Magnano Co. v. Hamilton, 292 U. S. 40, 54 S. Ct. 599, 78 L. Ed. 1109, and Schmitt v. Nord, supra, 71 S. D. 575, 579, 27 N. W. 2d 910, 912, sustain statutes which impose a tax of fifteen and ten cents respectively upon each pound of butter substitute sold within the state. In the Schmitt case it is said, "Further, it [the legislature] could, we think, reasonably conclude that the fiscal interest of the state would be served by encouraging our dairy industry." See also Ludwig v. Harston, supra, 1948, Wyo., 197 P. 2d 252.

Mississippi Power & Light Co. v. Love, 201 Miss. 676, 27 So. 2d 850, upholds an exemption of certain leasehold interests in oil, gas and other minerals on the theory it would encourage the investment of capital in them and the legislature could assert with some real reason it would be in the interest of the general welfare of the state that investments in such leases be encouraged.

City of Jackson v. Mississippi Fire Ins. Co., 132 Miss. 415, 421, 95 So. 845, 848, sustains an exemption for five years of insurance companies organized under the laws of Mississippi and domiciled there. The court observes that it may have occurred to the legislature there were not enough insurance companies in the state and it would be for the public good to encourage their formation and adds, "Other reasons for the exemption may be imagined."

In Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. Ed. 770, an exemption is upheld of building and loan associations from the operation of a tax on the amount secured by mortgages on the theory it is in recognition of the duty of the state to encourage the acquisition of homes by its citizens.

In Division III hereof we have referred to Apartment Oper-

ators Assn. v. City of Minneapolis, 191 Minn. 365, 369, 254 N. W. 443, 445, which upholds different classifications of property based on use, including homestead property. The principle we think is here applicable is thus stated in the opinion:

"The classification in chapter 359, in so far as it is based upon use, is in line with the policy of both the state and nation as evidenced by previous legislation enacted for the benefit and relief of occupant owners of homes. Such classification has a tendency to encourage the use of land for homestead purposes and is in furtherance of a sound public policy. The stability of government is promoted thereby."

Since we have upheld the classification of lands used for agricultural purposes upon the reasons stated in Division III and this Division IV, it is unnecessary to consider whether, as suggested by the legislative commission that recommended the passage of the act and as argued by defendants, the classification might also be sustained as in furtherance of the reorganization of school districts in order to improve our educational system. We may observe, however, this might well have been one of the considerations that occurred to the legislature in making the classification and we cannot say such conclusion could not be reached in good faith. The test of reasonableness of a classification is good faith of the legislature in making it. 1 Cooley, Taxation, Fourth Ed., section 334, page 714.

V. There can be little question as to the legislative power to subclassify agricultural lands containing ten acres or more separately from smaller tracts of such lands. The power to classify includes the power to subclassify within reason. 1 Cooley, Taxation, Fourth Ed., section 333, page 711; 51 Am. Jur., Taxation, section 179; 61 C. J., Taxation, section 59. Here again, the larger and smaller tracts have certain characteristics in common, just as all classes of property do. But it is obvious there are important differences between them. We cannot say it is wholly arbitrary to draw the line at ten acres.

That some other dividing line might have been adopted does not establish the invalidity of the ten-acre limitation. Hubbell v. Higgins, 148 Iowa 36, 41, 126 N. W. 914, Ann. Cas. 1912B

822, which sustains a subclassification of hotels with ten or more guest rooms; Berg v. Berg, 221 Iowa 326, 334, 335, 264 N. W. 821; 1 Cooley, Taxation, Fourth Ed., section 337, page 720.

As indicated in Division III hereof, Leicht v. City of Burlington, supra, 73 Iowa 29, 31, 32, 34 N. W. 494, 495, upholds a subclassification of agricultural tracts containing more than ten acres for purposes of municipal taxation as against the contention the ten-acre limitation was purely arbitrary. The opinion states, "It is of no use to consider the imperfection of the division. Absolute justice in taxation is unattainable." This subclassification of agricultural tracts containing more than ten acres, sustained in the Leicht case, has been part of our statutory law for seventy years.

We are content to rest our conclusion the ten-acre subclassification is not arbitrary upon Leicht v. City of Burlington, especially, and Hubbell v. Higgins and Berg v. Berg, all supra. See also Tolerton & Warfield Co. v. Board of Assessment and Review, supra, 222 Iowa 908, 270 N. W. 427, which sustains as nondiscriminatory various provisions of the Iowa Chain Store Tax Act (chapter 424, Code, 1946). Section 424.4 of that law applies the same rate of tax per store until the number exceeds ten, then steps up the rate at each multiple of ten until the number of stores exceeds fifty, and to all above fifty stores the same rate.

VI. Plaintiff argues the act separately classifies or subclassifies agricultural lands into tracts lying within and those lying without school districts where the millage for the school fund exceeds fifteen mills and says there is no basis for such classification. It is true the credit provided by the law is apportioned against the school tax on agricultural lands only in districts where such millage exceeds fifteen mills. In a sense, therefore, the act does not apply in districts where the millage does not exceed such figure.

In reality, however, the law separately classifies only lands used for agricultural purposes and those not so used and then subclassifies agricultural lands into tracts containing ten acres or more and those not that large (section 424.2) for the purpose of applying a different tax burden to the lands thus classified

414

in order to apportion the taxes to the actual benefits received, to encourage agriculture and, the legislature may also have felt, to further the reorganization of school districts so as to improve our educational system.

A ceiling of fifteen mills for school taxes is placed upon agricultural tracts of ten acres or more and the state, to the amount of $500,000, reimburses the districts in which the ceiling is applied. The South Dakota law, upheld in Great Northern R. Co. v. Whitfield, supra, 65 S. D. 173, 272 N. W. 787, 111 A. L. R. 1475, fixes eight mills as the ceiling for school taxes on agricultural lands.

We have held the classification and subclassification of agricultural lands are not purely arbitrary for the purpose of thus apportioning the tax burden. In response to the contention there is an added subclassification because of the fifteen-mill ceiling which is purely arbitrary, we will say merely that under the authorities cited in Division V it was not wide of any reasonable mark to draw the line at fifteen mills even though some other millage might perhaps have been specified.

Perhaps we should point out the fifteen-mill ceiling applies to any district where now *or in the future* such millage is exceeded. We are therefore not called upon to decide a question similar to one involved in such cases as Knudson v. Linstrum, 233 Iowa 709, 8 N. W. 2d 495; State ex rel. Welsh v. Darling, 216 Iowa 553, 246 N. W. 390, 88 A. L. R. 218; State ex rel. Pritchard v. Grefe, 139 Iowa 18, 117 N. W. 13.

VII. Plaintiff contends the act violates Article III, section 31, Constitution of Iowa, in that it appropriates public money for a private purpose. We will assume, without deciding, as plaintiff argues, the law would violate this provision if the appropriation were for a private purpose, even though it passed each branch of the legislature by a two-thirds vote.

Since, as we have held, this act is a valid taxing measure it is not rendered invalid by the appropriation provision. The public policy in furtherance of which the classification is made for the purpose of applying a different tax burden or a partial tax exemption, if the law be considered a partial-tax-exemption measure, is sufficient to support the appropriation. An act

cannot be said to be for a private purpose where "some principle of public policy" underlies its. passage. Whether an appropriation connected with a taxing statute is for a public purpose depends upon whether the remainder of the statute is for such purpose. See 1 Cooley, Taxation, Fourth Ed., section 177.

Without the appropriation made by the act the loss of revenue to the school districts by the imposition of the ceiling of fifteen mills would fall upon other property owners in the districts. Under the law as written, however, such loss is borne by the state up to the amount appropriated. The money is taken from one public fund and put into another.

That the appropriation feature of the act does not render it invalid in the respect claimed. see State v. Snyder, 29 Wyo. 199, 218, 231, 212 P. 771, 777, 782, which sustains a law that exempts from taxation property to the amount of $2000 of certain war veterans and provides for reimbursement by a state appropriation to each county in the amount of county tax on the exempted property. The court holds it a valid tax-exemption statute because the legislature might have found it served a public purpose as an incitement to patriotism and encouragement to defend the country in future conflicts and the validity of the law is not affected by the appropriation measure. This from the opinion is pertinent here:

"A lawful exemption from taxation cannot, we think, be regarded as a gift or donation to or in aid of the individual * * * in whose favor the exemption is declared. * * * Indeed, we do not think the statute makes a gift to the exemption claimant even indirectly. The state may be regarded as the sole actor. It exempts the property declared to be exempt and stands the loss not only of the state tax which would otherwise be collected, but the county tax as well. The money appropriated is public money whether in the state or county treasury, and by the statute is taken out of one public pocket or fund and put into another."

Our state constitution makes no attempt to define what . is a public purpose nor have the courts adopted any inflexible

definition. Carroll v. City of Cedar Falls, 221 Iowa 277, 283, 261 N. W. 652. See also 61 C. J., Taxation, sections 20, 21. Plaintiff concedes "what constitutes a public purpose, as distinguished from a private purpose, is sometimes difficult of determination." Numerous decisions are to that effect. The term "public purpose" is not to be construed narrowly. 1 Cooley, Taxation, Fourth Ed., section 175.

Courts are extremely reluctant to hold a tax statute invalid on the ground a tax is laid, an exemption granted or an appropriation in connection therewith made, for a private purpose. "It has been quite uniformly held by the courts that the determination of such questions inheres largely in the legislative power. Within the zone of doubt, that *is* * * * a public purpose which the legislature deems to be such." Grout v. Kendall, 195 Iowa 467, 477, 192 N. W. 529, 533, which unanimously upholds a Soldiers Bonus Act under which it was proposed to issue $22,000,000 of state bonds and levy a tax to retire them in order to pay a "bonus" to Iowa soldiers and sailors of World War I.

The authorities agree not only that the legislature has the broadest discretion as to what is a public purpose but also that such question is a changing one. See for example State ex rel. Wisconsin Dev. Auth. v. Dammann, 228 Wis. 147, 280 N. W. 698, 709; Laughlin v. City of Portland, 111 Maine 486, 90 A. 318, 320, 51 L. R. A., N. S., 1143, Ann. Cas. 1916C 734; City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 46 A. L. R. 828, 832; 1 Cooley, Taxation, Fourth Ed., section 183, page 394. The tendency of later cases is toward greater liberality in characterizing taxes or appropriations as public in purpose. State v. Dammann, supra, and citations.

A law may serve the public interest although it benefits certain individuals or classes more than others. Carman v. Hickman County, supra, 185 Ky. 630, 215 S. W. 408, 411; State ex rel. etc. v. Dammann, supra, 228 Wis. 147, 280 N. W. 698, 707, and citations; 1 Cooley, Taxation, Fourth Ed., section 181, page 392.

Carmichael v. Southern Coal & Coke Co., supra, 301 U. S. 495, 515, 57 S. Ct. 868, 875, 81 L. Ed. 1245, 1256, 109 A. L. R.

1327, 1336, states: "* * * whether the present expenditure serves a public purpose is a practical question addressed to the law-making department, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court." (Citations.)

It is well said in 1 Cooley, Taxation, Fourth Ed., section 189, pages 400, 401:

"It is only in a clear case that a statute imposing a tax will be held invalid on the ground that the tax is not for a public purpose. The question is one not 'of exclusive legal logic, but is one more or less of policy and wisdom, properly determinable in the light of public welfare, present and future, in a broad sense, and hence is not a pure judicial law question, except in those cases clearly outside of the twilight zone.'

"Money for a particular purpose may be raised by tax, it is said in one case, if there be the 'least possibility' that it will be promotive in any degree of the public welfare. * * * And still another presents the same idea in language but little different: 'To justify the court in * * * declaring the tax void, the absence of all possible public interest in the purpose for which the funds are raised must be clear and palpable; so clear and palpable as to be perceptible by every mind at first blush.' These are very strong and sweeping assertions, but they are supported by many others equally emphatic and comprehensive, which are to be met with in the adjudications of courts." .

And from 2 Cooley, Taxation, Fourth Ed., section 653, pages 1373, 1374: "An exemption, it would seem, should be made * * * on some ground of public policy * * * such as, at least, makes the public at large interested in encouraging or favoring the class or interest in whose behalf the exemption is made."

Again, from 1 Cooley, Taxation, Fourth Ed., section 175, page 384: "In case of doubt, courts are largely influenced by the public policy of the state, in determining whether taxation is for a public purpose." See also 61 C. J., Taxation, section 20.

As previously indicated, there can be no question it is part

of the public policy of this state to encourage agriculture. And the furtherance of the reorganization of school districts in order to improve our educational system would be as plainly part of our public policy. As hereinafter pointed out, it has been the policy of the legislature from its inception to grant numerous tax exemptions.

We are not convinced there is an absence of all possible public interest in the purposes for which the appropriation here is used. At least there is room for argument that both agriculture and the reorganization of our school districts will be encouraged as contributions to the welfare of the state as a whole. At best the question is not beyond the zone of doubt in which the legislative determination is conclusive on the courts.

In support of our holding see, in addition to authorities heretofore cited, State ex rel. State Reclamation Board v. Clausen, 110 Wash. 525, 542, 188 P. 538, 544, 14 A. L. R. 1133, 1142, which upholds an appropriation to purchase unoccupied land to be subdivided, improved and disposed of to certain war veterans, industrial workers and others desiring a rural life. The opinion observes, "* * * it cannot be said that the legislature has wrongly decided that to so encourage agricultural development in our state will promote its public welfare. It hardly needs argument to demonstrate that no other industry is so closely related to the welfare of the people as a whole."

VIII. The law in question seems directly analogous to the Homestead Tax Credit Act (chapter 425, Code, 1946). It is plainly patterned after the homestead law. The public policy served by the former is the encouragement of the industry on which the prosperity of the state largely depends. The public policy served by the other, as stated in Ahrweiler v. Board of Supervisors, 226 Iowa 229, 233, 236, 283 N. W. 889, is the encouragement of home ownership. Perhaps the ownership of homes is more beneficial to the state than the welfare of agriculture. If so, the distinction is largely of degree and not of kind.

While we have not passed directly upon the constitutionality of the Homestead Tax Credit Act it apparently has not been questioned in the courts in the nearly twelve years since its

passage (chapter 195, Acts of Forty-seventh General Assembly). And there are intimations the act is valid in Ahrweiler v. Board of Supervisors, supra, and Eysink v. Board of Supervisors, 229 Iowa 1240, 1247, 296 N. W. 376, 379. At least the Ahrweiler opinion emphasizes the fact the tax credits were not a gift with no consideration requirements in return but resulted in benefit to the public at large by encouraging home ownership. The Eysink case calls attention to the legislature's wide discretion in the matter of classification. As previously stated, in Apartment Operators Assn. v. City of Minneapolis, supra, 191 Minn. 365, 254 N. W. 443, the power to apply different tax rates to homesteads is directly upheld.

The various soldiers' tax-exemption measures (such as sections 427.3, 427.4, Code, 1946, parts of which have stood for many years apparently without challenge) are generally upheld upon somewhat different considerations—that the legislature has the power to discharge, at least in part, the state's moral obligation to those who served in the armed forces in time of emergency and to encourage similar patriotic efforts in the future. The constitutional basis for their enactment seems little, if any, more secure than that for the act in question.

As previously indicated, the legislative policy of this state throughout its history has been to grant numerous tax exemptions. Perhaps such policy is of doubtful wisdom. But of course the question here is one of legislative power, not wisdom.

There is no special limitation in our state constitution on the legislative power to grant tax exemptions. Many state constitutions specify what exemptions may be granted and expressly or impliedly forbid others. 2 Cooley, Taxation, Fourth Ed., section 661, page 1382; see also 51 Am. Jur., Taxation, section 502. Therein lies an important distinction between the present case and a few decisions from other jurisdictions which at first blush may seem in conflict with some of the views herein expressed.

The very next section (427.1) in the Code of 1946 following the act in question exempts from taxation twenty-two classes of property. Many of these in turn consist of different enumerations. In all, something like seventy items of property are

exempt. If we were to follow the argument of plaintiff, many of these exemptions of long standing could not be upheld although apparently they have never been questioned.

If there is no rational basis for applying a different rate or granting a partial exemption from school taxes upon agricultural land, how can the total exemption be upheld of all agricultural produce harvested by or for the taxpayer within the previous year? This exemption has stood since the Code of 1851 and removes from tax liability property of enormous value. What of the exemption in subsection 20, section 427.1, of stock of telegraph and telephone companies and several other designated kinds of corporations? If it be thought these exemptions are for the purpose of avoiding "double taxation," why is not stock of railroads and other corporations included in the exemption? They pay taxes on their property just as telephone and telegraph companies do. Many other related questions might be asked.

We conclude plaintiff has not demonstrated beyond a reasonable doubt the act in question violates, in the respects claimed, the constitutional provisions she has invoked. The decree is therefore affirmed.—Affirmed.

SMITH, C. J., and BLISS, HALE, WENNERSTRUM, and MANTZ, JJ., concur.

MULRONEY, OLIVER and HAYS, JJ., dissent.

MULRONEY, J. (dissenting)—I respectfully dissent. My views are expressed in the reversing opinion reported in 31 N. W. 2d 110, and it is not necessary to restate them here.

I am authorized to state that Justices OLIVER and HAYS join in this dissent.