## BIVINS et al. v. BOARD OF COM'RS OF WABAUNSEE COUNTY, KAN.

### No. 804.

Circuit Court of Appeals, Tenth Circuit.

July 24, 1933.

Earl H. Hatcher, of Topeka, Kan. (James E. Smith and Schuyler W. Jackson, both of Topeka, Kan., R. E. Underwood, R. C. Johnson, J. B. Dooley, and E. A. Simpson, all of Amarillo, Tex., and James R. Tolbert, of Hobart, Okl., on the brief), for appellants.

A. E. Carroll, of Alma, Kan. (E. W. Stuewe, of Alma, Kan., on the brief), for appellee.

Before LEWIS and PHILLIPS, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge.

Appellants, residents and citizens of Texas, complain that the District Court dismissed on demurrer their action to recover $3,711.42 paid as taxes assessed and levied on 3,941 head of their cattle while being pastured in Wabaunsee county, Kansas, during the spring and summer of 1929. Additional facts pleaded are: About May 1st, 1929, appellants shipped the cattle from Texas to Wabaunsee county. The contract of carriage was from a point in Texas to the cattle market in Missouri with feeding privileges en route in the state of Kansas, the cattle to be reloaded thereafter and carried to destination. They were reloaded in the following September and carried on, but while they were in Kansas they were assessed, and the tax officials would not permit them to be moved until the tax was paid. Appellants paid the tax under duress. They contend that the statute of Kansas, as construed by the supreme court of that state, which purports to authorize the assessment and levy, is void because in conflict with clause 1, § 2, article 4, U. S. Constitution, and with section 1 of the Fourteenth Amendment to said Constitution; also because the statute violates section 1, article 11 of the Constitution of Kansas, in that it does not provide a uniform and equal rate of assessment and taxation. They set up and relied on these constitutional provisions, national and state, in their complaint.

Paragraph "V" of the complaint alleges:

"That said cattle before being removed from the said state of Texas, on or about the 1st day of May, 1929, were with the other property of the plaintiffs listed for taxation for the year 1929 in said State of Texas and general ad valorem taxes under the laws of the said State of Texas were assessed against said cattle. That all taxes and charges of every kind and character whatsoever, due the State of Texas or any of the municipalities or other local organizations of government under the laws of the State of Texas, were fully

paid and discharged by these plaintiffs prior to the entrance of any of said cattle into or through the State of Kansas as herein set forth and their pretended assessment for taxation in Kansas."

The general statutes of Kansas provide that all property in that state shall be listed, valued and assessed as of March 1st each year; but this assessment was made under a special statute enacted in 1899. There have been some amendments; but its first section (Rev. St. Kan. 1923, 79—314) is this:

"When any personal property shall be located in any county in this state after the 1st day of March of any year which shall acquire an actual situs therein before the 1st day of September, such property is taxable therein for that year, and shall be assessed and placed on the tax roll and the tax collected as provided by this act."

It will be observed said section says that "any personal property" located in any county in the state after the 1st day of March which acquires an actual situs therein before September 1st shall be subject to taxation. The broad language of the section, including all personal property so located, met the objection to a prior statute of the state (Laws Kan. 1881, c. 34, § 1) which provided:

"When any stock shall be driven into any county of this state * * * from beyond the boundaries of this state, for the purpose of grazing therein, at any time prior to the first day of December of any year, such stock shall be liable to be assessed for all taxes leviable in that county for that year, the same as if the owner thereof resided and held said stock in such county on the first day of March of that year."

The Supreme Court of Kansas in Graham v. Chautauqua County, 31 Kan. 473, 2 P. 549, 551, 552, held that statute to be in conflict with said section 1 of article 11 of the Constitution of Kansas. Judge Brewer, later Associate Justice of the United States Supreme Court, delivered the opinion in that case, and speaking for the court, he summarized the argument in support of objections made to the statute, to-wit, that all personal property in the state on the first of March is listed for taxation, and that there was no general provision for taxing property brought into the state after the first of March, and the statute was an attempt to tax certain kinds of property when brought into the state for certain purposes, that if this was done the rate of assessment and taxation would not be uniform and equal, and that in order to support the statute all property brought into the state after the first of March must be listed for taxation, that no statute could be sustained which attempted to cast the entire burden of taxation on one class of personal property, and if this be true with respect to the entire year it should be applied also to a portion of the year. Having so stated the argument, he said:

"We think this argument is sound, and that if in addition to the listing of all property present in the state on the first of March, an attempt is made to list property brought in after the first of March, it must apply to all property so brought in. No distinction can be made as to property after the first of March, any more than it can as to property on that day. * * *

"We conclude, therefore, that the statute, so far as it attempts to provide for the listing of cattle brought into the state after the first of March for the purpose of grazing therein, is a departure from the constitutional rule of uniformity in matters of taxation, and cannot be upheld."

The second section of said special statute (now section 79—315, Rev. St. Kan. 1923) is this:

"Whenever any live stock shall be located in this state for the purpose of grazing, it shall be deemed to have acquired an actual situs therein as contemplated by this act."

The third section of said special act appears in the Revised Statutes as section 79—316. It was amended at a special session in 1930 (chapter 14, § 1 [Rev. St. Supp. 1931, 79—316]), after this controversy arose. We now quote it, so far as material here, so as to show the section prior to and after the amendment of 1930. The clause in brackets was added by the amendment of 1930, and the clause italicized was omitted in that amendment.

"79—316. When any person, association or corporation shall settle or organize in any county in this state, and bring personal property therein after the 1st day of March and prior to the 1st day of September in any year [or when any nonresident owner shall bring property into the state between such dates], it shall be the duty of the assessors to list and return such property for taxation that year, unless the owner thereof shall show to the assessors, under oath, and by producing a copy of the assessment, duly certified to by the proper officers of state or county in which said property was assessed, that the same property has been listed for taxation for that year in some other county in this state or in some other state or territory of the United

States in which property is required to be listed for taxation *on or before March 1 in each year."*

■■ It is thus seen that under said third section prior to the amendment of 1930, the only persons who were relieved from the payment of taxes on personal property brought into the state after March 1st were new settlers; but the Supreme Court of Kansas in its opinion in Mosby v. Board of Commissioners, 98 Kan. 594, 158 P. 657, 658, delivered on July 8, 1916, held that a resident of Kansas who brought personal property (live stock) into the state after March 1st and prior to September 1st came within the statute and the property so brought in could not be taxed, whereas the property of a nonresident under like conditions was subject to taxation. Mosby was a resident of Missouri. In 1913 he purchased 300 steers in Oklahoma and kept them in that state until the following May. About March 1st, 1914, the officers in Oklahoma levied a tax on the steers, and Mosby paid it later in the year. About May 1st, 1914, Mosby moved the cattle to a ranch owned by him in Greenwood County, Kansas, and shortly afterwards the assessors in that county placed the cattle on the tax roll, and levied a tax against them. He did not know his cattle had been so taxed until the following January when a tax warrant was placed in the hands of the sheriff, who was about to sell the cattle for taxes. To avoid this and under protest Mosby paid the amount of the taxes, and then sued to recover it. A demurrer to his complaint was overruled by the trial court, and Mosby recovered judgment. Mosby's cattle had been taken into Kansas for the purpose of grazing there, and they were assessed and taxed under this special statute. The Supreme Court in reversing the judgment in favor of Mosby said:

"The section [third of the special act] referred to has been interpreted to mean that the property of residents brought into the state after March 1st and before September 1st, which has been taxed elsewhere for that year, is not subject to taxation here, but that the property of nonresidents brought into the state during the period is subject to taxation."

It therefore held the statute (as thus construed) not to be an unjust discrimination against the nonresident owner, nor did it offend the equal protection limitations of the Federal Constitution. We must accept the statute as it was thus construed by the highest court of the state, but we cannot agree to the conclusion of that court that as thus construed it did not offend the federal guaranties. It is true that the court relied upon two of its prior decisions in which it had held that resident taxpayers, who resided in Kansas prior to March 1st and brought cattle into the state, were not liable to the tax under the special statute on a ground lying outside of the special statute, that is, on the ground that it was shown or inferred that such resident taxpayer had listed for taxation all of his property in Kansas on March 1st, and a part or all of the property so listed and taxed must have been converted into the purchase of the cattle that were brought from outside the state; but that fact, if it be a fact, was none the less a discrimination prohibited by the Federal Constitution as between resident and nonresident. The amendment of said section 3 by the act of 1930 must have been an effort to eliminate that discrimination, and to offset the construction given to said section 3 in the Mosby Case.

In Hull v. Johnston, 64 Kan. 170, 67 P. 548, 549, the court in discussing this special statute said:

"We may also take into consideration the well-known evil which it was designed to cure, and that the lawmakers thereby purposed to provide a method in such cases whereby such property should be taxed. Nonresidents were in the habit of bringing into this state personal property after the 1st of March—the time fixed by the general law as the date at which to tax—and then before the next March to remove it, and thus wholly escape taxation; this being especially true with reference to live stock brought into the state for grazing purposes."

But violation of federal guaranties cannot be a legitimate means to cure a claimed evil.

This statute as we now have it after the last amendment, plus the exemption given in the Mosby Case to residents who were such on March 1st, comes dangerously near bringing it under the rule announced by Judge Brewer in the Graham Case.

The guaranties of section 2, article 4, U. S. Constitution and the Fourteenth Amendment thereto and their application are exhaustively considered in Blake v. McClung, 172 U. S. 239, 19 S. Ct. 165, 43 L. Ed. 432. In Power Mfg. Company v. Saunders, 274 U. S. 490, 47 S. Ct. 678, 679, 71 L. Ed. 1165, it is said:

"The clause in the Fourteenth Amendment forbidding a state to deny to any person within its jurisdiction the equal protection of the

laws is a pledge of the protection of equal laws."

In Re Jarvis, 66 Kan. 329, 71 P. 576, 577, the court had under consideration a statute of the state which made it a misdemeanor for anyone to deal as a peddler without paying for and procuring a license from the county clerk, but exempted from its operation an owner of goods who peddled them in the county in which he was a resident taxpayer or in any county immediately adjoining thereto. The court said:

"The statute therefore attempts to impose a tax upon nonresidents of the state, from which certain residents of the state are exempted by the fact of such residence. This is an obvious discrimination in favor of the resident and against the nonresident, and is repugnant to section 2 of article 4 of the federal constitution, which provides that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

The Supreme Court of Vermont in Sprague v. Fletcher, 69 Vt. 69, 37 A. 239, 37 L. R. A. 840, had under consideration a statute which restricted to residents of the state the right to deduct from personal taxes debts owing by them. A nonresident, who had personal property in the state, was denied the right of deduction, and it was held that the denial was a discrimination against the nonresident forbidden by said section 2 of article 4.

Reversed with directions to vacate the order sustaining the demurrer and dismissing the complaint.