No. 32,285

MARY E. BIVINS et al., Executrix and Executors of the Estate of Lee Bivins, Deceased, *Appellees,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF RILEY, *Appellant.*

(44 P. 2d 229)

Opinion filed May 4, 1935.

*Scott Pfuetze,* county attorney, *Hal E. Harlan* and *A. M. Johnston,* both of Manhattan, for the appellant.

*James E. Smith, Earl H. Hatcher, Frank H. McFarland, Schuyler W. Jackson,* all of Topeka, *J. B. Dooley* and *James R. Tolbert,* both of Amarillo, Tex., for the appellees.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from a judgment allowing recovery of taxes paid under protest.

For our purposes the facts may be stated as follows: Plaintiffs are residents of Texas, where in the spring of 1929 they owned and had large numbers of cattle which were duly assessed for taxation for the year 1929, the tax being ultimately paid. About May 1, 1929, they shipped some of the cattle to Riley county to be placed in pastures for the grazing season. The proper officers of Riley county assessed the cattle for taxation for the year 1929, under R. S. 79-314 to 79-321, both inclusive, and thereafter a tax warrant issued and was to be executed; the plaintiffs, learning of this, paid the tax under protest, concerning the sufficiency of which there is no controversy. On December 5, 1929, plaintiffs sought relief before the state tax commission, which was denied, and on August 6, 1930, they filed a claim for repayment with the board of county commissioners of Riley county, which was not allowed. Thereafter they brought the present action, in which recovery was allowed. The defendant's motion for a new trial was denied and it appeals.

Considerable space in the briefs is devoted to the question whether the cattle were in course of transport in interstate commerce, but we shall not discuss that, for whether the plaintiffs were entitled to recover is determinable upon the question of the constitutionality of the taxing statutes as applied to the undisputed facts. Appellant urges that the case is determined by our decision in *Mosby v. Greenwood County,* 98 Kan. 594, 158 Pac. 657, while appellee contends that case was not correctly decided and should be overruled.

In 1876 a comprehensive tax law was enacted, and under section 7 of chapter 34 of the Laws of 1876, which covered other matters as well, it was provided that—

"Animals and farming implements shall be listed and taxed where permanently kept: *Provided,* That if the owner of such animals lives outside the limits of a city, such property shall be taxed in the township where the owner resides; but in case such animals and farming implements are temporarily outside the limits of this state, or in any unorganized county of this state, then said animals and implements shall be listed and taxed in the county, township and school district where the owner resided on the first day of March."

This section was amended by the Laws of 1877, but the above portion was not changed. It was again amended by chapter 34 of

the Laws of 1881 (G. S. 1889, § 6852), where the above language, with slight change in punctuation, was reënacted, and the following sentence was added:

"When any stock shall be driven into any county of this state from any unorganized county or from beyond the boundaries of this state, for the purpose of grazing therein, at any time prior to the first day of December of any year, such stock shall be liable to be assessed for all taxes leviable in that county for that year, the same as if the owner thereof resided and held said stock in said county on the first day of March of that year."

From the opinion in *Graham v. Comm'rs of Chautauqua Co.*, 31 Kan. 473, 2 Pac. 549 (decided in 1884), it appears that Graham, a resident of Montgomery county, in May, 1880, bought some steers then in the Indian territory. In November, 1880, some of the steers were brought into this state and then taken back to the territory where they remained until in March and April, 1881, when they were taken into Belleville township in Chautauqua county where they were assessed for taxation. Later they were moved to another township in the same county and in October, 1881, they were again driven into the Indian territory. The tax on the cattle had been paid in the Indian territory. Graham' brought an action to enjoin the collection of the tax, contending that all property is taxable as of March 1 and there being no general provision for taxing property brought into the state after March 1, the result was an attempt to tax only certain kinds of property, and therefore a violation of the constitutional requirement of uniformity. Reference is made to the statute of 1881, and the opinion states:

"We conclude, therefore, that the statute, so far as it attempts to provide for the listing of cattle brought into the state after the first of March for the purpose of grazing therein, is a departure from the constitutional rule of uniformity in matters of taxation, and cannot be upheld." (p. 478.)

In 1899 an act (Laws 1899, ch. 248) was passed providing for assessment and taxation in certain cases, the third section providing for the assessment of property brought into the county after March 1 and before September 1. This section was amended by chapter 364 of the Laws of 1901, to include the italicized words hereafter shown, and was thereafter unchanged until in the revision of 1923 a change in reference to a certain statute was made. It appeared as R. S. 79-316 and was in force when the cattle in the instant case were assessed. It reads in part:

"When any person, association or corporation shall settle or organize in any

county in this state, and bring personal property therein after the 1st day of March and prior to the 1st day of September in any year, it shall be the duty of the assessors to list and return such property for taxation that year, unless the owner thereof shall show to the assessors, under oath, . . . that the same property has been listed for taxation for that year in some other county of this state *or in some other state or territory of the United States,*" etc. (Italics ours.)

In *Hull v. Johnston,* 64 Kan. 170, 67 Pac. 548, Hull, a resident of Greenwood county, made his tax return for 1899. On May 1 he bought cattle in Texas and shipped them into Greenwood county where an attempt was made to tax them under chapter 248 of the . Laws of 1899. He brought suit to enjoin collection and ultimately prevailed, it being held:

"The provisions of chapter 248, Laws of 1899 (Gen. Stat. 1901, § § 7519-7526), the title to which chapter is 'An act providing for the assessment and taxation of property in certain cases,' do not apply to property brought into a county by a resident thereof after the 1st of March, where such resident had fully listed all of his property for taxation under the general tax laws of the state." (Syl.)

In *Lingenfelter v. Ferguson,* 71 Kan. 154, 80 Pac. 48, it appeared that Ferguson, a resident of Sumner county, listed his property as of March 1, 1902. On April 1 he brought into the county 852 head of cattle which he had purchased in Oklahoma and on which the tax had been paid for 1902. The cattle were assessed in Kansas, a tax warrant issued and suit to enjoin enforcement was instituted. In disposing of the appeal it was held:

"Where a resident of Kansas brings into this state, between March and September, cattle that he has purchased elsewhere with money which he has already listed for taxation for that year in the city of his residence, such cattle are not subject to taxation under the provisions of the act (Gen. Stat. 1901, sections 7519-7521) providing in certain cases for the assessment and taxation of personal property brought into the state after the 1st of March." (Syl.)

In *Mosby v. Greenwood County,* 98 Kan. 594, 158 Pac. 657, George Mosby, a resident of Missouri, purchased cattle in Oklahoma, where they were assessed for taxation as of March 1, 1914, the tax being subsequently paid. On May 1, 1914, he brought the cattle into Greenwood county, where they were placed on the tax roll. Mosby had previously returned his personal property in the county for taxation. He did not discover until January, 1915, that his cattle had been taxed and the sheriff was about to sell them on a tax warrant. He paid the taxes under protest and brought suit to recover. The court discussed the purposes of the act and referred to

*Hull v. Johnston* and *Lingenfelter v. Ferguson,* supra, but made no reference to the Graham case above noted. It was held that:

"The provisions of chapter 248 of the Laws of 1899, as amended by chapter 364 of the Laws of 1901, which authorizes the assessment of property brought into the state after March 1 and prior to September 1 of any year, and which contains an exception that a resident owner will not be required to pay taxes on such property if he shall show to the assessor that the property has been listed for taxation for that year in some other county of the state or in some other state or territory, is not an unjust discrimination against a nonresident, nor does it deny to him the equal protection of the laws.

"It is competent for the state to impose taxes upon all property brought within its jurisdiction, and this power is not lost because such property may have been subjected to taxation for that year in the state from which it was brought."

The principal question before us is whether the last-mentioned case was properly decided, whether it should be adhered to or overruled.

The force and effect of the decisions above noted is that by the Graham case it was held that farm machinery and animals cannot be singled out and subjected to taxation, otherwise the rule as to uniformity is violated; by the Hull and Lingenfelter cases that if the owner were a resident of Kansas on March 1, he could not be assessed on property brought into the state thereafter and prior to September 1, if the tax for that year had been paid in the state of origin, but under the Mosby case, if he were a nonresident of the state, the property could again be taxed even though tax for the current year had been paid in the state of origin. The conclusion to be reached from the Hull, Lingenfelter and Mosby cases is that whether tax is assessable or not under the same circumstances depends on the residence or nonresidence of the owner, and that to so tax a nonresident is not in violation of his constitutional rights.

At about the same time the present plaintiffs brought cattle into Riley county, they also brought into Wabaunsee county about 4,000 head of cattle which were likewise placed on the tax roll, a tax warrant issued, the tax was paid under protest, and suit was brought in the district court of the United States for the district of Kansas to recover. The trial judge sustained a demurrer to the petition and an appeal was taken to the circuit court of appeals, where our statutes and decisions were reviewed. That court was bound to accept the state statute as construed by this court in the Mosby case, but held that the statute subjecting only nonresidents' property brought

into the state during certain periods of the year to taxation violated plaintiffs' rights under article 4, section 2, clause 1 and under amendment 14, clause 1 of the United States constitution. (*Bivins v. Board of Comm'rs of Wabaunsee County*, [Kan.] 66 F. 2d 351.) In the opinion that court quotes from *In re Jarvis*, 66 Kan. 392, 71 Pac. 576, as follows:

"The statute [Laws 1901, ch. 271] therefore attempts to impose a tax upon nonresidents of the state, from which certain residents of the state are exempted by the fact of such residence. This is an obvious discrimination in favor of the resident and against the nonresident, and is repugnant to section 2 of article 4 of the federal constitution, which provides that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." (p. 332.)

And see *In re Irish*, 122 Kan. 33, 250 Pac. 1056, and *Hair v. City of Humboldt*, 133 Kan. 67, 299 Pac. 268, where discrimination against nonresidents is treated.

Upon consideration of the facts of the instant case, we are of opinion that to hold, as was done in the Mosby case, that cattle owned by a nonresident of Kansas, and on which the tax for the current year was paid in the state of origin, and brought into this state after March 1 and before September 1 of the current year, could be taxed, whereas under our decisions had they been owned by a resident of Kansas they would not have been subject to tax, would be to discriminate against such nonresident owner in violation of his rights under the United States constitution, article 4, section 2, clause 1, and amendment 14, clause 1, thereto. *Mosby v. Greenwood County*, 98 Kan. 594, 158 Pac. 657, is overruled.

It may be remarked that by section 1 of chapter 14 of the Laws of 1930, the above statute, R. S. 79-316, was amended, so that under its terms there is no longer any discrimination.

The judgment of the lower court is affirmed.

JOHNSTON, C. J., not sitting.