ROBERT M. BORDEN et al., appellants, v. MARVIN R. SELDEN, JR., State Comptroller, et al., appellees.

No. 52367.

810

NOVEMBER 15, 1966.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellants.

Lawrence F. Scalise, Attorney General, Timothy McCarthy, Solicitor General, and Allan D. Vestal, Special Assistant Attorney General, for appellees.

STUART, J.—The one question presented by this appeal is whether an Act which, by its terms, denies to nonresident owners of land in Iowa a land tax credit granted resident owners of Iowa land, violates the Constitution of the United States and/or the Constitution of the State of Iowa. The trial court held the Act constitutional and plaintiffs appealed.

In 1945 the Fifty-first General Assembly passed the Agricultural Land Tax Credit Act (now chapter 426, Code of Iowa). It provided for a state fund to be apportioned as a credit against the tax on each tract of agricultural land in school districts where the millage for the general school fund exceeded 15 mills. The amount of such credit was to be the amount by which the school tax exceeded a tax based on a levy of 15 mills. In the event the legislative appropriation was insufficient to pay the credit in full, it was to be paid on a pro rata basis. The constitutionality of the Act was upheld in Dickinson v. Porter, 240 Iowa 393, 35 N.W.2d 66.

The Sixty-first General Assembly in 1965 amended the Act to provide: "Agricultural land tax credit computed after January 1, 1966, payable in 1967, will not be paid to any owner who is not a bona fide resident of the state of Iowa, or to any corporation which does not have a situs in the state for the purpose of paying the tax imposed upon corporations under division III, chapter four hundred twenty-two (422) of the Code, if such corporation is the owner of property which would otherwise be eligible for the agricultural land tax credit." Section 2, chapter 356, Laws 61st General Assembly, 1966 Code, 426.3.

Plaintiffs are individual nonresident owners of agricultural land in Iowa, who, prior to the amendment received agricultural land tax credit. It is conceded such credit will be denied them in 1967 and subsequent years under the amendment solely on the basis of their nonresidence. As a consequence, they will be re-

quired to pay from $1.00 to $1.25 per acre more real-estate taxes in 1967 than an Iowa resident similarly situated.

Plaintiffs claim the Act violates Article IV, section 2, of the Constitution of the United States, the privileges and immunities and due process clauses of section 1, Amendment 14, to the Constitution, and Article I, section 6, of the Constitution of the State of Iowa in that: "it constitutes an unlawful, unreasonable discrimination against these plaintiffs and against other nonresident owners of land in Iowa; and because the attempt of the General Assembly to classify nonresident owners of land in Iowa as persons not entitled to the agricultural land tax credit, is not a reasonable classification; and because there is no reasonable ground for the discrimination against these plaintiffs and other nonresident owners of land in Iowa in favor of owners of land who are residents of Iowa."

I. The principles which govern our examination of constitutional questions appear to be well settled. They are set forth with supporting authority in Dickinson v. Porter, 240 Iowa 393, 398, 399, 35 N.W.2d 66, 71:

■ "All presumptions are in favor of the constitutionality of this statute and it will not be held invalid unless it is clear, plain and palpable that such decision is required."

■ "We have pointed out repeatedly the General Assembly has power to enact any kind of legislation it sees fit provided it is not clearly and plainly prohibited by some provision of the state or federal constitution."

■ "It is not our province to pass upon the policy, wisdom, advisability or justice of a statute. The remedy for unwise or oppressive legislation within constitutional bounds is not to be found in the courts but by appeal to the legislators."

■ "The burden does not rest upon defendants (state and county officials charged with duties under the law) to convince us the act is constitutional. Plaintiff has the burden to satisfy us beyond a reasonable doubt * * * the act violates the constitutional provisions invoked and to point out the manner or respect in which it violates them. In other words, she 'must point out and state with particularity the details of supposed invalidity.' "

"Further, it is plaintiff's burden to negative every conceivable basis which may support this statute."

We shall consider whether the amendment set out above violates Article IV, section 2, of the Constitution of the United States which in its pertinent parts provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens of the several States."

The United States Supreme Court in considering the purposes of this clause in Travis v. Yale & Towne Mfg. Co., 252 U. S. 60, 78, 40 S. Ct. 228, 231, 64 L. Ed. 460, 469, quoted from earlier cases as follows:

"The purpose of the provision came under consideration in Paul v. Virginia, 8 Wall. 168, 180 [19 L. Ed. 357, 360], where the court, speaking by Mr. Justice Field, said: 'It was undoubtedly the object of the clause in question to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws. It has been justly said that no provision in the Constitution has tended so strongly to constitute the citizens of the United States one people as this.' And in Ward v. Maryland, 12 Wall. 418 [20 L. Ed. 449], holding a discriminatory state tax upon non-resident traders to be void, the court, by Mr. Justice Clifford, said (p. 430): '* * * the clause plainly and unmistakably secures and protects the right of a citizen of one State to pass into any other State of the Union for the purpose of engaging in lawful commerce, trade, or business without molestation; to acquire personal property; to take and hold real estate; to maintain actions in the courts of the State; and to be exempt from any higher taxes or excises than are imposed by the State upon its own citizens.' "

"It was designed to insure to a citizen of State A who ven-

tures into State B the same privileges which the citizens of State B enjoy." Toomer v. Witsell, 334 U. S. 385, 395, 68 S. Ct. 1156, 1162, 92 L. Ed. 1460, 1471.

This does not mean, however, that there is an "iron rule of equal taxation." Dickinson v. Porter, supra, loc. cit. 401 of 240 Iowa, 72 of 35 N.W.2d. The following quotation from Madden v. Kentucky, 309 U. S. 83, 87, 60 S. Ct. 406, 408, 84 L. Ed. 590, 593, while referring to Amendment 14 seems equally applicable here: "The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago concluded that 'the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation,' and the passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."

The amendment clearly distinguishes between owners of Iowa agricultural land solely on the basis of residence and discriminates in favor of Iowa residents and against nonresidents. This classification is not necessarily unconstitutional if there is a reasonable basis for such classification other than residence itself. Dickinson v. Porter, supra, loc. cit. 71 of 35 N.W.2d; Goodwin v. State Tax Commission, 286 App. Div. 694, 146 N. Y. S.2d 172, 179; Burge v. Marcum, Ky., 394 S.W.2d 908, 910; Berry v. State Tax Commission, 241 Ore. 580, 397 P.2d 780, 782.

"Like many other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar dis-

crimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. The inquiry must also, of course, be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures." Toomer v. Witsell, 334 U. S. 385, 396, 68 S. Ct. 1156, 1162, 92 L. Ed. 1460, 1471.

██ " 'The power of a State to make reasonable and natural classifications for purposes of taxation is clear and not questioned; but neither under form of classification nor otherwise can any State enforce taxing laws which in their practical operation materially abridge or impair the equality of commercial privileges secured by the Federal Constitution to citizens of the several States.' Chalker v. Birmingham & N. W. Ry. Co., 249 U. S. 522, 526, 39 S. Ct. 366, 367 (63 L. Ed. 748). Classification may be supported by many considerations of expediency or fairness and, nonetheless, may be illegal if it denies to the citizens of any State the privileges and immunities that belong to citizens of another. To put it differently, equality in such circumstances is itself the highest policy, to which other policies must bow." Smith v. Loughman, 245 N. Y. 486, 491, 157 N.E. 753, 755.

We therefore must determine whether the classification of agricultural landowners into residents and nonresidents provides a reasonable basis for the allowance of a credit against taxes on agricultural land owned by residents. There is nothing in the Act which indicates any basis for such distinction. The trial court and appellees have suggested certain "desirable social policies" as valid reasons for such classification.

██ It is urged the legislature might reasonably have believed it desirable to keep ownership of land in the hands of those who "live on or close to" the land concluding this would tend to provide closer supervision, better maintenance and closer identity with the land, community and state. Without deciding

whether "closer identity with the land" could support a constitutionally acceptable classification, we conclude the classification into residents and nonresidents is not a reasonable one to accomplish the suggested purpose. There is a lack of a reasonable relationship between such purpose and this classification.

"The classification must provide for a basis which will effectually single into a separate class the persons or objects with which the purpose of the legislature is concerned. There must be a reasonable relationship between the purpose of the legislation, and the basis of the classification set out in the Act." Keefner v. Porter, 228 Iowa 844, 848, 293 N.W. 501, 503.

A resident of Moline, Illinois, with agricultural land in Scott County is in a much better position to properly supervise his land than a resident of Sioux City who might own an adjoining farm. A farmer living across the state line in Putnam County, Missouri, could own and farm as one unit land in Missouri and Iowa. He would be denied the agricultural land tax credit granted to an absentee owner living in Mason City. Nonresidence alone does not provide a reasonable basis to accomplish the suggested public purpose.

We do not consider "closer identity with the community and state" a valid reason for a discriminating tax rate. This distinction could be used to justify any discrimination between a resident and nonresident and is the very evil the constitutional provision is designed to prevent.

A second justification suggested is the value of participation of residents in the government of the state and at the local level. While we recognize the value of intelligent participation in governmental affairs, this classification does nothing to encourage government participation by residents. The benefit is solely on the basis of residence rather than active participation in governmental affairs. The relationship between the suggested purpose and the classification in the amendment is indirect at best and in our opinion is not sufficiently close to make a valid distinction between residents and nonresidents on a land tax credit. This attempted justification arises solely out of conditions directly attributable to nonresidence.

Appellees suggest equalization of tax burden between

residents and nonresidents as a third reason for the classification. This has been held to be a valid reason for such distinction in certain tax statutes. Goodwin v. State Tax Commission, 286 App. Div. 694, 146 N. Y. S.2d 172; Madden v. Kentucky, 309 U. S. 83, 60 S. Ct. 406, 84 L. Ed. 590 (Amendment 14); Berry v. State Tax Commission (1965), 241 Ore. 580, 583, 397 P.2d 780, 782. The inquiry remains "whether the degree of discrimination bears a close relation to the reasons, apart from residence, which a state legislature may have had for enacting an apparently discriminatory law." Berry v. State Tax Commission, supra.

The agricultural land tax credit on local property taxes is paid from state funds derived primarily from state income and sales tax. A nonresident would probably pay little sales tax in Iowa on purchases connected with his personal living expense and would pay no income tax on income received outside of Iowa. He would probably pay sales tax on purchases made in connection with the agricultural land and would pay Iowa income tax on the income from such land. In addition he would be paying these or equivalent taxes to the state of his residence to help support the government of that state. Denying him the land tax credit would not be tax equalization but in fact would burden him with a greater portion of the cost of the Iowa school system than his resident neighbor.

Benefits received from taxation have been recognized as a valid basis for permitting discriminatory tax rates or exemptions. Green Acre Baha'i Institute v. Town of Eliot, 159 Maine 395, 193 A.2d 564, 566; Dickinson v. Porter, 240 Iowa 393, 402, 35 N.W.2d 66. It is urged a nonresident receives the benefit of Iowa roads to carry the products of the land to market but does not pay gasoline tax or registration fees. He may not pay them directly, but the vehicle which is used to haul products to market must be registered and uses gas. Whether owned by an independent trucker or a farm tenant, the state gets its fees and taxes to the same extent it would if a resident owned the land and used it for these purposes.

It is suggested nonresidents benefit from Iowa schools through better tenants. Accepting as a fact the idea that an

educated tenant is a better tenant, it does not follow that the benefit to the nonresident landlord is such that he should pay a larger portion of the Iowa school costs than his resident neighbor who receives the same benefit. This is also true if good tenants are more available because there are good schools for his children. There is no unique benefit to the nonresident absentee owner. The benefits to the absentee owner are the same whether he lives in Iowa or elsewhere. It is true the resident absentee owner contributes more to the state funds through taxes connected with his residence and personal living expenses, but this, as discussed above, is offset by a similar contribution by the nonresident owner to the taxes of his state. We do not believe this to be such a benefit or inequality that a discrimination in tax rates is made constitutionally acceptable.

The nonresident receives no direct benefit from the Iowa school system. A resident absentee owner may benefit, depending upon his particular circumstances. The tenants of each contribute in an equal manner to the support of the schools. One of the principal arguments for increased school aid is that a greater part of the burden of supporting the schools should be shifted from the property owners to those who use the schools. To deny nonresidents a credit granted residents on this basis is to discriminate solely on the basis of nonresidence without a valid reason. The classification rests solely on the fact of nonresidence. None of the suggested policy considerations is based upon a reasonable relationship with the classification.

"The principle of equal treatment for the citizens of all the States is a good deal more precious than the gain of revenue in one year or another. We are not to whittle it down by refinement of exception or by the implication of a reciprocal advantage that is merely trivial or specious. The principle is put in jeopardy—there is set in it an entering wedge that may be the beginning of its destruction—if this statute is upheld." Smith v. Loughman, 245 N. Y. 486, 496, 157 N.E. 753, 757.

In February of this year the Supreme Court of South Dakota rendered an advisory opinion on a property tax relief Act which in effect was very similar to the amendment under consideration here in that it granted a refund on real-estate taxes to

South Dakota residents not allowed nonresidents. The court said: "There is no reasonable basis for the discrimination contained in House Bill 707. It is based solely upon residence, and to the extent of the credit or refund imposes a higher tax upon the citizens of other states than is imposed on our own. Consequently, we are compelled to advise you that the bill in question violates the quoted provisions of the Constitution of the United States and is, in our opinions, clearly unconstitutional." Opinion of the Judges, 81 S. Dak. 629, 632, 140 N.W.2d 34, 35.

See also Bivins v. Board of Commissioners, 66 F.2d 351; Bivins v. Board of County Commissioners, 141 Kan. 916, 44 P.2d 229; State ex rel. McCulloch v. Ashby, 73 N. M. 267, 387 P.2d 588.

■■■ II. Appellee urges the trial court should be affirmed because the credit involved is approximately $1.00 to $1.25 per acre and that this is not grossly unequal or virtually exclusionary. The amount which seems insignificant on a per acre basis, becomes substantial when you multiply that figure by the number of acres in a farm—240- or 360-acre farms are quite common. Many are much larger and the average size is increasing each year. If the figure is converted into a percentage figure, the non-resident plaintiffs would pay from 10 percent to 18 percent more taxes than the residents situated similarly. This is a substantial difference. If the legislature would determine to implement the land tax credit in full, the difference would be much greater. We are not impressed by the argument that some landowners in the county pay more with the credit than a nonresident plaintiff pays without the credit. This is due to different millage rates in separate school districts. The comparison, to be accurate, must be made with resident taxpayers within the same school district.

We do not consider cases cited by appellee in which discriminatory rates for licenses are approved to be directly in point when an ad valorem tax is involved. Wheeling Steel Corporation v. Glander, 337 U. S. 562, 69 S. Ct. 1291, 93 L. Ed. 1544.

■■■ III. We therefore hold section 2, chapter 356, Laws of the Sixty-first General Assembly, violates the privileges and immunities clause of Article IV, section 2, of the Constitution of

820

the United States. We need not consider the other questions raised by appellant.—Reversed.

All JUSTICES concur except LARSON, J., who takes no part, and THORNTON, J., not sitting.