(698 P.2d 842)
No. 56,900

In the Matter of the Protest of: LITHO STEPPING, INC. (Now STEPPING SERVICES, INC.), *Appellee*, v. WYANDOTTE COUNTY, *Appellant*.

Opinion filed April 18, 1985.

*John M. Duma,* associate county counselor, for the appellant.

*Francis J. Donnelly,* of Shawnee Mission, for the appellee

Before FOTH, C.J., MEYER and BRISCOE, JJ.

FOTH, C.J.: The issue in this case is whether a Kansas resident who acquires taxable personal property after January 1, but before July 1, must pay personal property taxes on it for the year of acquisition because of the provisions of K.S.A. 79-316. The Board of Tax Appeals said "yes." On appeal the district court said "no," or at least "not under the facts of this case."

The facts are undisputed. The taxpayer, Litho Stepping, Inc., (now Stepping Services, Inc.) is a Kansas corporation formed in October, 1980, to engage in the business of enlarging color photographs and preparing film for multiple reproduction. On January 1, 1981, it was still in the formative stage with its sole place of business in Prairie Village, Johnson County, Kansas. At that time it owned no taxable property, and in due course made a tax rendition to Johnson County reflecting that fact. In March and April of 1981 it relocated to Kansas City, in Wyandotte County, and purchased the equipment involved here. The major pieces were a camera and accessories purchased for $170,810.00

from a Johnson County manufacturer, and a film processor purchased from a Johnson County dealer for $27,475.82.

Upon discovering the taxpayer was a newly licensed Wyandotte County business, the Wyandotte County appraiser requested the taxpayer to provide a list of its personalty. The taxpayer complied, supplying a list in late spring, 1981. The county appraiser then appraised the property (99 percent of the value being the camera and processor), assessed it, and issued the taxpayer a notice that it owed $8,516.88 in 1981 ad valorem property taxes. The taxpayer paid the taxes under protest and filed a refund application with the Board of Tax Appeals under K.S.A. 79-2005.

In a series of orders the Board ruled, in substance: (1) K.S.A. 79-316 is a specific taxing statute which modifies the provisions of the general statutes taxing personalty; (2) it applies to any resident of the state, whether newly arrived or not, as well as to nonresidents; (3) it taxes all personalty brought into this state after January 1 and before July 1 for the full year of acquisition, unless the taxpayer can show that it was listed for taxation elsewhere for the same year; (4) it applies to personalty brought into the taxing county from another county in this state as well as from outside the state; and (5) showing that the taxpayer's vendor paid a merchants' or manufacturers' inventory tax for the taxable year is insufficient to exempt the property under 79-316 because no property is specifically listed or identifiable in a merchants' or manufacturers' rendition of inventory.

Accordingly the Board rejected the taxpayer's protest and application for refund. The taxpayer appealed to the district court.

The district court found the Board's action arbitrary and capricious in two respects: (1) If the merchants' and manufacturers' inventory renditions of the taxpayer's vendors were insufficient to exempt the property, it was arbitrary to require the taxpayer to furnish them; and (2) the statute only applies to property brought into the state from outside the state, and not to property moved from one county to another.

The district court, therefore, sustained the protest and ordered a refund. Wyandotte County has appealed to this court.

We regard the trial court's first finding as something of a makeweight; the appellee makes no serious effort to support the judgment on this ground. The primary issue is the interpretation

of the statute. We are unable to agree with the interpretation of either the Board or the district court. K.S.A. 79-316 provides:

"When any person, association or corporation settles or organizes in any county in this state, and brings personal property therein after January 1 and prior to July 1 in any year, or when any nonresident owner brings property into the state between such dates, the county appraiser shall list and return such property for taxation in that year, unless the owner thereof shows to the county appraiser under oath, and by producing a copy of the assessment, duly certified by the proper officers of the state or county in which such property was assessed, that the same property has been listed for taxation for that year in some other county in this state or in some other state or territory of the United States in which property is required to be listed for taxation.

"[The second paragraph provides for belated appraisal returns to the county clerk and belated equalization by the board of county commissioners.]"

Our difficulty with the Board's interpretation begins with its reading of the language: "When any person, association or corporation settles or organizes in any county in this state." The Board interprets this to mean simply "when any resident of this state" brings property into a county it is to be taxed. It seems to us that if the legislature meant "resident" it could easily have said so. We note that cosmetic amendments were made to this phrase in 1982 (Laws of 1982, ch. 391, § 23) changing "shall settle or organize" to "settles or organizes." No attempt was made to abandon the "new settler" concept in favor of simple residency. The Board's reading simply ignores the concept of settlement or organization; as will be discussed later in this opinion, the phrase was perceived as significant when it was first adopted. And *cf. State ex rel. v. Dwyer*, 204 Kan. 3, 13, 460 P.2d 507 (1969), Fromme, J., dissenting, where the "settle or organize" language of the statute is emphasized.

On the other hand, we cannot accept the trial court's reading that the statute applies only to property brought in from outside the state. The statute speaks of one who settles or organizes in "any county of this state" and brings personal property "therein." The word "therein" refers back to "county," not "state." Further, one way the exemption may be claimed is by showing that the property was listed "in some other county in this state." One who could make such a showing would necessarily be dealing with property brought into the taxing county from some other county "in this state," and not from outside the state.

We are troubled also by the discriminatory effect of both the

Board's and the district court's interpretations. That discrimination takes three forms. First, the Wyandotte County businessman who buys his equipment in Wyandotte County is free of tax for the first year regardless of whether his vendor has paid taxes on it. The statute simply does not apply unless the taxpayer brought the property into the county. On the other hand, a Wyandotte County businessman who buys the same equipment in Johnson County (the Board's reading) or in Kansas City, Missouri (both readings) would be taxed unless he could show his vendor was taxed for the same year. And, under the Board's reading, he could not do that if he bought from a merchant or manufacturer. The discrimination between the two Wyandotte County businessmen is apparent; one pays $8,500.00 more in taxes for the identical transaction simply because he bought out-of-county.

The second type of discrimination is that between vendors. A Johnson County dealer under the Board's reading, or an out-of-state dealer under either reading, must make a price concession of $8,500 to compete with a Wyandotte County dealer. The statute thus becomes a home-county protective tariff.

Third, under the Board's reading there is in some cases discrimination between businessmen who move during the year, or at least the first half of the year, and those who do not. A Johnson County businessman who buys a piece of equipment locally pays no taxes on it for the current year if he stays in Johnson County. But if he moves to Wyandotte County before July 1 and takes the equipment with him, it will be taxed in Wyandotte County for that year. He has brought it into the county and cannot show that it was listed elsewhere simply because it was not required to be listed in the former home county.

These inequities, we believe, were never intended by the legislature. This view, we think, is supported by a cursory analysis of the history of personal property taxation in this state.

Chapter 34 of the Laws of 1876 was our first comprehensive taxing statute. It specified who was to list personal property and where, and in Section 11 established March 1 the day as of which all property was to be assessed. (That date was changed to January 1 by Laws of 1959, ch. 365. We shall refer to whichever is applicable as "Tax Day.") By specific provision of the statute a sale of property after that day did not relieve the one who owned it on Tax Day of the duty to list the property and subsequently

pay taxes on it for that year. By the same token, one who bought *after* Tax Day was not liable to list the property, even though the prior owner failed to do so. For example, where goods were in the county the entire year, one who purchased them on March 8, just one week after Tax Day, owed no taxes on them for that year. *Howell v. Scott*, 44 Kan. 247, 24 Pac. 481 (1890). With few exceptions, that remains the rule today. *See State ex rel. v. Dwyer*, 204 Kan. at 6, where the few exceptions are noted.

It was not long before the legislature's attention turned to the vast herds of cattle being driven into Kansas after March 1, fattened on Kansas grass, and shipped out before the next March 1. Since the cattle were never here on Tax Day, they were never subject to Kansas personal property taxes. The result was Chapter 34 of the Laws of 1881, amending Section 7 of the 1876 act. The original Section 7 merely detailed where various types of personal property were to be listed. The amendment added that when any stock were driven into any county from either an unorganized county or from outside the state for grazing purposes any time before December 1, the owners would be liable for county taxes for the entire year as if owned and located in the county on March 1.

This act was held unconstitutional in *Graham v. Comm'rs of Chautauqua Co.*, 31 Kan. 473, 2 Pac. 549 (1884). Justice Brewer, writing for the court, found this attempt to tax livestock specially to be a violation of the "uniform and equal" clause of the Kansas Constitution, Art. 11, § 1, saying "if in addition to the listing of all property present in the state on the first of March, an attempt is made to list property brought in after the first of March, it must apply to all property so brought in. No distinction can be made as to property after the first of March, any more than it can as to property on that day." 31 Kan. at 478.

In 1899 the legislature took Justice Brewer at his word and passed the predecessor of the statute now before us, in Laws of 1899, ch. 248. The first three sections of the act provided:

"Section 1. When any personal property shall be located in any county in this state after the 1st day of March of any year which shall acquire an actual situs therein before the 1st day of September, such property is taxable therein for that year and shall be assessed and placed on the tax-roll, and the tax collected as provided by this act.

"Sec. 2. Whenever any live stock shall be located in this state for the purpose of

grazing it shall be deemed to have acquired an actual situs therein as contemplated by this act.

"Sec. 3.   When any person, association or corporation shall settle or organize in any county in this state, and bring personal property therein after the 1st day of March and prior to the 1st day of September in any year, it shall be the duty of the assessors to list and return such property for taxation that year, unless the owner thereof shall show to the assessors, under oath, that the same property has been listed for taxation for that year in some other county in this state."

These became, through codification, K.S.A. 79-314, -315, and -316 respectively. In 1901, the third section was amended to permit exemption if the property had been previously listed "in some other state or territory" as well as in some other county. L. 1901, ch. 364, § 1.

Our Supreme Court promptly decided that the new act was inapplicable to a resident who listed his property in full on Tax Day and later brought property—even cattle—into the county from outside the state. In *Hull v. Johnston,* 64 Kan. 170, 67 Pac. 548 (1902), a Greenwood County resident of long standing bought Texas cattle in May and brought them into his home county. When the local assessor sought to tax them he sought an injunction. The court held they were not taxable under the 1899 act, but only after a considerable struggle to construe the act and find a place for it in the preexisting statutory scheme.

The court first looked at the title of the act, which was to tax property "in certain cases," *i.e.,* cases not covered by the general tax laws. (The act is referred to in later cases as "the special act.") The court then recognized the "well-known evil" the act was designed to cure:

"Non-residents were in the habit of bringing into this state personal property after the 1st of March—the time fixed by the general law as the date at which to tax—and then before the next March to remove it, and thus wholly escape taxation; this being especially true with reference to live stock brought into the state for grazing purposes." 64 Kan. at 172.

In attempting to construe the act the court found it necessary to ignore its literal language:

"While more explicit language could have been used, it seems to us apparent that the language of neither sections 1, 2 nor 3 was intended to apply to cases of this sort. If this language is read in the light of the object to be accomplished, the light which illuminated the mind of the legislator, and in which we must read it, it will be seen that while some general language is used, it is general only in the sense of covering everything within its scope and purpose, which scope and purpose was to catch and tax property which under the provisions of the law already in existence was not bearing its legitimate share of the public burdens.

"No portion of the general law was repealed. No cases therein provided for were intended to be again covered, but by sections 1 and 2 personal property which had theretofore escaped taxation was laid hold of for the purposes of taxation; *while in section 3 is found a concession to those who should become actual residents after March 1.*

"With this interpretation this chapter accomplishes its purpose, becomes a harmonious part of the general law, accomplishes no injustice, and is altogether intelligible and reasonable, *which it is not in any of these particulars without this construction.*" 64 Kan. at 172-73. Emphasis added.

Thus the contemporaneous construction of the act was that it aimed only at property which would otherwise escape all taxation. Sections 1 and 2 were the taxing sections; section 3, the section now before us, was not a *taxing* section but an *escape* section, a "concession" to those who became actual residents after Tax Day.

That reading was reinforced in *Lingenfelter v. Ferguson,* 71 Kan. 154, 80 Pac. 48 (1905). There Ferguson, a resident of Sumner County, listed his property there as of March 1, and then in April brought 852 head of cattle into Butler County from Oklahoma. The court once again held that the special act of 1899 did not make the cattle taxable. It construed the holding of *Hull v. Johnston* as being:

"[T]hat while this statute was in terms broad enough to require the taxation of all personal property brought into this state between March and September which had not been taxed elsewhere for that year, *it must be interpreted as intended to affect only such property as would otherwise escape its just share of the burden of taxation, and has no application to property brought into a county by a resident thereof after the 1st of March, where such resident had fully listed all of his property under the general laws.* . . . It was there decided that the purpose of the statute was to provide a means for placing upon the tax-roll property which received the protection of the laws of the state and in fairness should bear a part of the expense of their administration, but which under the general law could not be reached because never found in the state at the usual time for the listing of property for taxation." 71 Kan. at 156. Emphasis added.

As to the taxpayer Ferguson, the court noted that he had already paid his share of taxes in Sumner County on all property he owned on Tax Day, presumably including the money used to buy the cattle. It observed:

"Where foreign-owned property is sent into the state for a temporary purpose, and after several months is removed without having contributed anything to the public revenue, a manifest wrong is committed; but where it comes into the state in exchange for other property or money upon which taxes have already been here assessed and paid, an entirely different situation is presented. The statute

was not designed to exact a further payment from the resident purchaser in such a case. To do so would not be to correct an existing injustice, but to perpetrate a new one." 71 Kan. at 157.

Further, since the statute simply didn't cover *residents'* property purchased after Tax Day, whether Ferguson had adequately shown that the cattle were assessed in Oklahoma was irrelevant. He was not required to demonstrate an exemption under section 3 because *his* cattle were not taxed under section 1.

This limited view of the statute's scope was carried over into a series of cases dealing with its applicability to cattle belonging to nonresidents. The first of these was *Mosby v. Greenwood County*, 98 Kan. 594, 158 Pac. 657 (1916). In upholding the statute's taxation of nonresidents' property while exempting that of residents, the court rationalized:

"In the case of a resident the theory is that all of his money and property will be regularly listed and assessed and that his obligation to the state will be fully discharged, while the nonresident who brings his property here after March 1 *and takes it out before the next assessment* will contribute nothing to the public for the protection afforded him. (*Hull v. Johnston,* 64 Kan. 170, 67 Pac. 548; *Lingenfelter v. Ferguson,* 71 Kan. 154, 80 Pac. 48.) The statute is not an unjust discrimination against the nonresident owner, nor does it offend the equal protection limitation of the federal constitution, as the intention of the provision is the imposition of taxes upon all the property in the state by the same method of valuation and at the same rate. To accomplish this, a separate provision was made *to reach property that was brought to and kept in the state between the ordinary times of assessment and which would otherwise escape taxation.*" 98 Kan. at 596. Emphasis added.

*Mosby's* finding of no discrimination against nonresidents was overruled in *Bivins v. Riley County Comm'rs*, 141 Kan. 916, 44 P.2d 229 (1935). The court there reviewed the history of the act and concluded that taxing the nonresident while exempting the resident under identical circumstances denied the nonresident the equal protection of the law, contrary to the Fourteenth Amendment, and also violated the Privileges and Immunities clause of Article IV of the United States Constitution. The same result had been reached just two years earlier in *Bivins v. Board of Com'rs of Wabaunsee County, Kan.*, 66 F.2d 351 (10th Cir. 1933).

During the pendency of the two *Bivins* cases the legislature, in the special session of 1930, amended section 3 of the act (79-316) to make the exemption for previously assessed property available to nonresidents as well as new settlers. The Kansas court

thought this had solved the discrimination problem. 141 Kan. at 921. The Tenth Circuit expressed doubts. 66 F.2d at 353. As to both courts the comments were *obiter dicta*.

Although the statute has been cited in passing in later cases, the two *Bivins* cases of 50 years ago are the latest judicial attempts to fathom its meaning. The Kansas court, in its *Bivins* case, seemed to view the exemption for Kansas residents as depending on a showing of taxation elsewhere. The federal court read *Mosby, Lingenfelter,* and *Hull* as finding the property of residents acquired after Tax Day nontaxable on grounds lying outside the statute, *i.e.,* "on the ground that it was shown or inferred that such resident taxpayer had listed for taxation all of his property in Kansas on March 1st, and a part or all of the property so listed and taxed must have been converted into the purchase of the cattle that were brought from outside the state. . . ." 66 F.2d at 353.

The quoted language clearly reflects the rationale, at least in part, of *Lingenfelter*. It does not take into account the holding of *Hull,* recognized in both *Lingenfelter* and *Mosby,* that the statute simply does not apply to residents unless they are moving their cattle in and out of the state between Tax Days.

One more historical fact bears noting. In 1965 the legislature repealed K.S.A. 79-314. L. 1965, ch. 511, § 12. That was section 1 of the special act of 1899, and was the section which actually declared that property acquiring a situs in Kansas after Tax Day was to be taxed. Section 2 (79-315), dealing with the situs of cattle, and section 3 (79-316), providing a possible exemption for new residents, were supplemental to section 1, and were originally designed as implementation measures. When section 1 of the act was repealed, the other two sections were left dangling, with no taxing statute left to implement.

What, then, are we to make of this statute? We believe our historical review reveals it to be an anachronistic anomaly, with no real place in our present statutory scheme of taxation. The transient cattle problem, we note, is now specifically dealt with in K.S.A. 79-316b and -316c. It may be that the 1930 amendment eliminated the discrimination between residents and nonresidents in the availability of an exemption for previously assessed property. It did not, however, address in any way the three types

of discrimination among property of various classes of taxpayers noted in the early portion of this opinion.

In the final analysis, if we are to give any effect at all to this statute, we think we must return to the contemporaneous interpretation of *Hull v. Johnston*, without which, the court said, the statute would not accomplish its purpose, would not be harmonious with the general law, would result in injustice, and would be unintelligible and unreasonable. 64 Kan. at 173. Under that interpretation, despite its general terms the statute applies only to persons who bring property into the state after Tax Day and intend to remove it before the next Tax Day to evade paying taxes altogether.

The taxpayer here cannot be said to fall into that category. It was a Kansas resident on Tax Day of 1981, and made its rendition in its home county. The fact that it then owned no taxable property is of no moment. There is no suggestion that it intended to remove the property before the next Tax Day, January 1, 1982. In fact, it listed the property for 1982 and paid its taxes on it.

The situation of this taxpayer, as we see it, was no different from that of Ferguson in *Lingenfelter v. Ferguson*. Each made a full home-county rendition on Tax Day, and each thereafter brought property into another county. Ferguson was exempt in the new county because he didn't own the property on Tax Day and, because he was a Kansas resident on Tax Day, the special act of 1899 did not apply to him. Because the act didn't apply to him, the result would have been the same if Ferguson had moved from Sumner to Butler County, where the cattle were kept. Likewise this taxpayer is exempt because it didn't own the property on Tax Day, and the statute does not apply to this taxpayer simply because it moved from Johnson to Wyandotte County. Such a move between counties of this state is not a significant taxable event, making taxable what is not taxable under the general law.

Finally, we note that the effect of the Board's reading, and to a lesser extent the trial court's reading, would be in many cases simply to move a resident's Tax Day from January 1 to July 1. That is to say, a taxpayer's rendition as of January 1 would be meaningless. It would be each taxpayer's duty to update the rendition each year to reflect property purchased between January 1 and July 1, and the county appraisers' duty to ferret out all such purchases and see that the property was assessed. The

legislature may wish to do this, but we cannot find such an intent in this 85-year-old statute which has never before been given such a reading. It was not thought to do this when it was enacted, and we find nothing in any subsequent amendment which would demonstrate any intent to make such a drastic innovation in our tax laws.

The trial court found the property in question exempt and ordered a refund under a different theory than ours. Nevertheless, it reached the right result and must be affirmed. *Farmers State Bank v. Cooper*, 227 Kan. 547, 556, 608 P.2d 929 (1980).

Affirmed.